**RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT**
**DIVISION OF AIR RESOURCES**
**AIR POLLUTION CONTROL REGULATION NO. 37**

**RHODE ISLAND'S LOW EMISSIONS VEHICLE PROGRAM**

37. Low Emissions Vehicles

37.1 Definitions

As used in these regulations, the following terms shall, where the context permits, be construed as follows:

37.1.1 "Air contaminant emission control system" means the equipment designed for installation on a motor vehicle or motor vehicle engine for the purpose of reducing the air contaminants emitted from the motor vehicle or motor vehicle engine or a system or engine modification on a motor vehicle which causes a reduction of air contaminants emitted from the motor vehicle engine, including but not limited to exhaust control systems, fuel evaporation control systems and crankcase ventilating systems.

37.1.2 "AT-PZEV" means an advanced technology partial zero emission vehicle.

37.1.3 "California Air Resources Board" or "CARB" means the California State agency established and empowered to regulate sources of air pollution in California, including motor vehicles, pursuant to California health & safety code sections 39500 et seq.

37.1.4 "California Standards" means those emission standards for motor vehicles and new motor vehicle engines that the state of California has adopted and is permitted to adopt pursuant to the authority of 42 U.S.C.A. Section 7543 and which other states are permitted to adopt pursuant to 42 U.S.C.A. Section 7507.

37.1.5 "CCR" shall mean the California Code of Regulations

37.1.6 "Certification" means a finding by CARB that a motor vehicle, motor vehicle engine, or air contaminant emission control system has satisfied the criteria adopted by CARB for the control of specified air contaminants from motor vehicles.

37.1.7 "Certified device" means an air contaminant emission control system for which a certification has been issued by CARB or the Department.

37.1.8 "Dealer" means any person engaged in the business of selling, offering to sell, soliciting or advertising the sale of new vehicles who holds a valid sales and

service agreement, franchise or contract, granted by the manufacturer or distributor for the retail sale of said manufacturer's or distributor's new vehicles.

37.1.9 "Department" means the Rhode Island Department of Environmental Management.

37.1.10 "Emergency Vehicles" means any publicly owned vehicle operated by a peace officer in performance of their duties, any authorized emergency vehicle used for fighting fires or responding to emergency fire calls, any publicly owned authorized emergency vehicle used by an emergency medical technician or paramedic, or used for towing or servicing other vehicles, or repairing damaged lighting or electrical equipment, any motor vehicle of mosquito abatement, vector control, or pest abatement agencies and used for those purposes, or any ambulance used by a private entity under contract with a public agency.

37.1.11 "Emission standard" means specified limitations on the discharge of air contaminants into the atmosphere.

37.1.12 "Executive order" means a document issued by CARB certifying that a specified test group or model year vehicle has met all applicable Title 13 CCR requirements for certification and sale in California.

37.1.13 "Fleet-wide average" means a motor vehicle manufacturer's average vehicle emissions of all non-methane organic gases from all vehicles subject to this regulation, produced and delivered for sale in Rhode Island in any model year, based on the calculation in Title 13 CCR 1961, and incorporated herein by reference.

37.1.14 "Light-duty truck" means any 2000 and subsequent model motor vehicle rated at 8,500 pounds gross vehicle weight or less, and any other motor vehicle rated at 6,000 pounds gross vehicle weight or less, that is designed primarily for purposes of transportation of property or is a derivative of such a vehicle, or is available with special features enabling off-street or off-highway operation and use.

(a) "LDT1" means a light-duty truck with a loaded vehicle weight of 0-3750 pounds.

(b) "LDT2" means a "LEV II" light-duty truck with a loaded vehicle weight of 3751 to a gross vehicle weight of 8500 pounds or a "LEV I" light-duty truck with a loaded vehicle weight of 3751-5750 pounds.

37.1.15 "LEV" means a low emissions vehicle.

37.1.16 "Mail Out" means a widely distributed general correspondence issued by CARB whenever said board needs information from the public, or when it wishes to inform the public of new information.

37.1.17 "Manufacturers advisory correspondence" means a document issued by CARB, which is a policy interpretation for further clarification of the CCR applicable to motor vehicles.

37.1.18 "Model year" means a motor vehicle manufacturer's annual production period which includes January 1 of a calendar year or, if the manufacturer has no annual production period, the calendar year. In the case of any vehicle manufactured in two or more stages, the time of manufacture shall be the date of completion of the chassis.

37.1.19 "Motor Vehicle" means a vehicle which is self-propelled but does not include a self-propelled wheelchair, invalid tricycle, or motorized quadricycle, if operated by a person who, by reason of physical disability, is otherwise unable to move about as a pedestrian.

37.1.20 "Neighborhood Electric Vehicle" or "NEV" means a motor vehicle that meets the definition of "low speed vehicle" either in section 385.5 of the California Vehicle Code or in CFR 571.500 (as it existed on July 1, 2000), and is certified to zero-emission vehicle standards.

37.1.21 "New vehicle" means any passenger car or light duty truck with 7,500 miles or fewer on its odometer.

37.1.22 "NMOG" means non-methane organic gas.

37.1.23 "Passenger car" means any motor vehicle designed primarily for transportation of persons and having a design capacity of twelve persons or less.

37.1.24 "Person" means an individual, trust, firm, joint stock company, corporation (including a quasi-governmental corporation), partnership, association, syndicate, municipality, municipal or state agency, fire district, club, non-profit agency or any subdivision, commission, department, bureau, agency or department of state or federal government (including quasi-governmental corporation) or of any interstate body.

37.1.25 "PZEV" means partial zero emission vehicle.

37.1.26 "Recall" means:

(a) A manufacturer's issuing of notices directly to consumers that vehicles in their possession or control should be corrected, or;

(b) A manufacturer's efforts to actively locate and correct vehicles in the possession or control of consumers.

37.1.27 "Recall campaign" means that plan approved by CARB or the Department, by which the manufacturer will effect the recall of non-complying vehicles.

37.1.28 "Test Group" means a grouping of vehicles as defined by 40 CFR 86.1827-01.

37.1.29 "Test vehicle" means an experimental or prototype motor vehicle which appears to have very low emission characteristics or a used motor vehicle within which an experimental motor vehicle pollution control device is installed, and which has also received a test vehicle or fleet permit from CARB pursuant to Manufacturers Advisory Correspondence no. 83-01.

37.1.30 "Ultimate purchaser" means, with respect to any new motor vehicle or new motor vehicle engine, the first person who in good faith purchases a new motor vehicle or new motor vehicle engine for purposes other than resale.

37.1.31 "Used motor vehicle" means motor vehicle that is not a new motor vehicle.

37.1.32 "ZEV" means a zero emission vehicle.

37.2 Applicability

37.2.1 The Department hereby adopts the sections of the California Low Emission Vehicle program applicable to passenger cars and light duty trucks under Title 13 CCR.

37.2.2 This regulation shall apply to all 2008 model year and subsequent model year passenger cars and light duty trucks sold, leased, offered for sale or lease, imported, delivered, purchased, rented, acquired, received, or registered in the State of Rhode Island.

37.2. All technical guidance issued by CARB relative to the implementation of Title 13 CCR, including but not limited to Manufacturers Advisory Correspondences and Mail Outs shall be applicable to all vehicles subject to this regulation.

37.3 Emissions Requirements and Credits

37.3.1 No person shall sell, import, deliver, purchase, lease, rent, acquire, receive, or register a new vehicle subject to this regulation in the State of Rhode Island that has not received a CARB Executive Order for all applicable requirements of Title 13 CCR 1900, 1960.1, 1960.5, 1961, 1962, 1962.1, 1965, 1968.1, 1968.2, 1968.5, 1976, 1978, 2037, 2038, 2062, 2101, 2111, and 2235, incorporated herein by reference, unless the vehicle is sold directly from one dealer to another dealer, sold for the purpose of being wrecked or dismantled, sold exclusively for off-highway use, or sold for registration out of state, and except as provided in section 37.3.7.

37.3.2 It is conclusively presumed under this regulation that the equitable or legal title to any motor vehicle with an odometer reading of 7,500 miles or more has been transferred to an ultimate purchaser and that the equitable or legal title to any motor vehicle with an odometer reading of less than 7,500 miles has not been transferred to an ultimate purchaser.

37.3.3 Fleet-wide Average NMOG Requirements

(a) Effective model year 2008, and for each subsequent model year, compliance with the Fleet-wide Average Non-Methane Organic Gas Exhaust Emission Requirement in Rhode Island, as set forth at Title 13 CCR 1961, shall be demonstrated for each motor vehicle manufacturer according to the procedures in Title 13 CCR 1961, and shall be based on the number of vehicles, subject to this regulation, produced and delivered for sale by each manufacturer in the State of Rhode Island. The Department shall provide that emission credits and debits, based on the number of vehicles, subject to this regulation, produced and delivered for sale by each manufacturer, in the State of Rhode Island, may be accrued and utilized by each vehicle manufacturer pursuant to the procedures set forth at Title 13 CCR 1961.

(b) In model years 2008 through 2010, manufacturers can earn NMOG credits in Rhode Island in accordance with the procedures set forth in Title 13 CCR 1961(b)(1). Notwithstanding the requirement in section 37.3.3(a) that compliance be demonstrated for each model year, manufacturers may demonstrate compliance with the Fleet-wide Average NMOG Exhaust Emission Requirement in Rhode Island for model years 2008 through 2010 following the 2010 model year and may apply NMOG credits earned during any of the model years 2008 through 2010 when demonstrating compliance.

37.3.4 ZEV Requirements

Each manufacturer shall comply with the Zero Emission Vehicle sales requirement in Rhode Island and based on Rhode Island total vehicle sales, as set forth in Title 13 CCR 1962. Compliance with the Zero Emission Vehicle sales requirement shall be required for model year 2008 and subsequent model years.

37.3.5 ZEV Credit Account Balances

(a) Manufacturers may voluntarily establish ZEV credit account balances by transferring ZEV credit balances for each ZEV credit account maintained in California from California to Rhode Island at the beginning of model year 2008. This transfer will be performed only after all credit obligations for model years 2007 and earlier have been satisfied in California. The manufacturer's California credit balances shall be multiplied by the ratio of the average number of PCs and LDT1s produced and delivered for sale in Rhode Island to the average number PCs and LDT1s produced and delivered for sale in California in model years 2000 through 2002 or, alternatively, by the ratio of PCs and LDT1s produced and delivered for sale in Rhode Island to PCs and LDT1s produced and delivered for sale in California in model year 2008. In either case, the time period used to determine the credit transfer ratio will also be used to determine model year 2008 ZEV sales requirements in Rhode Island.

(b) As an alternative to the credit transfer method in section 37.3.5(a), manufacturers may voluntarily establish ZEV credit balances by transferring ZEV credit balances for each ZEV credit account maintained in California from California to Rhode Island that existed at the beginning of model year 2005. The manufacturer's California credit balances shall be multiplied by the ratio of the average number of PCs and LDT1s produced and delivered for sale in Rhode Island to the average number of PCs and LDT1s produced and delivered for sale in California in model years 2000 through 2002 or, alternatively, by the ratio of PCs and LDT1s produced and delivered in Rhode Island to PCs and LDT1s produced and delivered in California in model year 2005. This transfer will be performed only after all credit obligations for model years 2004 and earlier have been satisfied in California. If the average number of PCs and LDT1s produced and delivered in 2000 through 2002 is used to determine the credit transfer ratio, that time period will be used to determine the model year 2008 ZEV sales requirement. If the number of PCs and LDT1s produced and delivered in model year 2005 is used to determine the credit transfer ratio, model year 2008 will be used to determine model year 2008 ZEV requirements.

(c) Each ZEV credit account established under section 37.3.5(b) shall be adjusted by subtracting any credit expenditures in California in model years 2005 through 2007. The credit expenditure adjustment will equal the difference between the model year 2008 California ZEV credit account balance and the model year 2005 California ZEV credit account balance, multiplied by the ZEV credit account transfer ratio determined in accordance with section 37.3.5(b). This calculation shall be performed only after all credit obligations for model years 2007 and earlier have been satisfied in California. If the model year 2008 credit balance for an account is equal to or greater than the model year 2005 credit balance for the account, no credit expenditure adjustment shall be made.

(d) All ZEV credit accounts established under section 37.3.5(b) shall be adjusted by adding ZEV credits earned in Rhode Island in model years 2005 through 2007. Rhode Island ZEV credits are determined in accordance with California ZEV credit rules for the same model year and are subject to the same multipliers. Credits earned in accordance with this section are also subject to an additional Rhode Island multiplier of 1.25.

(e) AT-PZEV credit accounts established under section 37.3.5(b) may be adjusted by adding excess PZEV credits earned in California and applied as AT-PZEV credits under Title 13 CCR 1962(b)(2)(D). AT-PZEV credits shall be transferred using the ZEV credit account transfer ratio determined in accordance with section 37.3.5(b). AT-PZEV credits may be used for meeting a manufacturer's ZEV obligations during model years 2008 and 2009.

(f) Each manufacturer electing to transfer credits under section 37.3.5(b) shall offer for sale or lease in model years 2006 through 2011 in Rhode Island any PZEV, AT-PZEV, or ZEV, except Type III ZEVs, offered in California through model year 2011 in accordance with Title 13 CCR 1962(b)(2), that is offered for sale or lease in California. To comply with this requirement, manufacturers shall make a good faith effort to offer vehicles in numbers that are approximately equal to the ratio of sales demand in Rhode Island to the sales demand in California.

(g) Type III ZEVs produced and delivered for sale in Rhode Island shall be credited as allowed by Title 13 CCR 1962(d)(5)(D) and not subject to the credit account transfer ratio calculated in sections 37.3.5 (a) through (d).

(h) Each manufacturer electing to transfer credits under section 37.3.5(b) shall notify the Department of its intent to do so within 60 days of the effective date of this regulation.

(i) Until such time as NEVs can be legally registered in Rhode Island, manufacturers that generate ZEV credits in California through the sale of NEVs shall receive Rhode Island credits for those sales. Credits will be transferred annually using the ZEV credit account transfer ratio determined in accordance with either section 37.3.5(a) or 37.3.5(b), as applicable to the manufacturer. For manufacturers electing to transfer credits under section 37.3.5(b), NEV credits will be transferred beginning in model year 2005.

37.3.6 Anti-tampering Provisions

(a) No person shall disconnect, modify, or alter any emission-related part, except for purposes of repair or replacement.

(b) No person shall operate or leave standing upon any highway any motor vehicle subject to this regulation and required to be equipped with an emission control device meeting the standards of this regulation, or subject to the motor vehicle pollution control device requirements pursuant to the Clean Air Act, 42 U.S.C. Section 7401 et seq., inclusive, and the standards and requirements promulgated thereunder, unless the motor vehicle is equipped with the required motor vehicle pollution control device which is correctly installed and in operating condition.

37.3.7 Exemptions

(a) Motor vehicles held for daily lease or rental to the general public or engaged in interstate commerce which are registered and principally operated outside the State of Rhode Island, shall not be subject to the requirements of sections 37.3.

(b) Motor vehicles defined as test vehicles, as emergency vehicles, or qualifying for exemption under Section 43656 of the California Health and Safety Code, incorporated herein by reference, shall not be subject to the requirements of sections 37.3.

(c) Motor vehicles purchased by a nonresident prior to establishing residency in the State of Rhode Island; or

(d) Motor vehicles transferred by inheritance, or by decree of divorce, dissolution or legal separation entered by a court of competent jurisdiction; or

(e) Motor vehicles acquired by a resident of the State for the purpose of replacing a vehicle registered to said resident which was damaged or inoperative, beyond reasonable repair, or was stolen while out of the State; provided that such replacement vehicle is acquired out of the state at the

time the previously registered vehicle became damaged or inoperative, beyond reasonable repair, or was stolen.

37.4 Vehicle Testing

37.4.1 New Vehicle Certification Testing

(a) All new vehicle models subject to this regulation, sold or leased in the State of Rhode Island, must be certified as meeting the motor vehicle emission requirements of Title 13 CCR 1960.1, 1960.5, 1961, 1962, 1962.1, 1965, 1968.1, 1968.2, 1968.5, 1976, 1978, 2037, 2038, 2062, 2101, 2111, and 2235, incorporated herein by reference, as determined by testing conducted in accordance with the testing procedures incorporated in said Section of Title 13. Testing reports must be provided to the Department upon request.

(b) For the purposes of compliance with section 37.4.1(a), New Vehicle Certification Testing determinations and findings made by CARB shall be applicable.

37.4.2 Assembly Line Testing.

(a) All manufacturers of new vehicles subject to this regulation, shall conduct Inspection Testing and Quality Audit Testing in accordance with Title 13 CCR 2062, and incorporated herein by reference. Testing reports must be provided to the Department upon request.

(b) For the purposes of compliance with section, 37.4.2(a) Inspection Testing and Quality Audit Testing determinations and findings made by CARB shall be applicable.

(c) In the event that a vehicle manufacturing facility which manufactures vehicles certified to the California standards, for sale in Rhode Island, is not subject to the above Inspection Testing and Quality Audit Testing requirements of CARB, the Department may, after consultation with CARB, require Inspection Testing and Quality Audit Testing at such facility in accordance with Title 13 CCR 2062, 2106, 2107, and 2150, and incorporated herein by reference; provided that upon a manufacturer's written request and demonstration of need, functional testing pursuant to the procedures incorporated in Title 13 CCR 2062 of a statistically significant sample may substitute for the 100% testing rate in Title 13 CCR 2062, with the written consent of the Department.

37.4.3 New Vehicle Compliance Testing

(a) New vehicle models subject to this regulation, prior to their being offered for sale or lease in the State of Rhode Island, must meet the motor vehicle emission requirements of Title 13 CCR 1961, as determined by New Vehicle Compliance Testing, conducted in accordance with Title 13 CCR 2101 - 2110, 2150, and 2151, and incorporated herein by reference. Testing reports must be provided to the Department upon request.

(b) For the purpose of compliance with section 37.4.3(a), New Vehicle Compliance Testing determinations and findings made by CARB shall be applicable.

37.4.4 In-Use Vehicle Enforcement Testing

(a) For purposes of detection and repair of vehicles subject to this regulation failing to meet the motor vehicle emission requirements of Title 13 CCR 1961, the Department may conduct, after consultation with CARB, In-Use Vehicle Enforcement Testing in accordance with the protocol and testing procedures in Title 13 CCR 2140, and incorporated herein by reference. Testing reports must be provided to the Department upon request.

(b) For the purposes of compliance with section 37.4.4(a), In-Use Vehicle Enforcement Testing determinations and findings made by CARB shall be applicable.

37.4.5 In-Use Surveillance Testing

(a) For the purposes of testing and monitoring the overall effectiveness in the State of Rhode Island of the program set forth in this regulation in controlling emissions, the Department may conduct In-Use Surveillance Testing after consultation with CARB.

(b) For the purposes of program planning and analysis, In-Use Surveillance Testing determinations and findings made by CARB shall be applicable.

37.5 Warranty

37.5.1 All manufacturers of new vehicles which are sold, leased, offered for sale or lease, or registered in the State of Rhode Island shall warrant to the owner that each vehicle shall comply over its period of warranty coverage with all

requirements of Title 13 CCR 2035 - 2038, 2040, and 2041, and incorporated herein by reference.

All manufacturers shall submit to the Department, upon request, Failure of Emission-Related Components reports as defined at Title 13 CCR 2144, for vehicles subject to this regulation, in compliance with the procedures in Title 13 CCR, and incorporated herein by reference.

37.5.2 For purposes of compliance with section 37.5.1, manufacturers may submit copies of the Failure of Emission-Related Components reports that are submitted to the California Air Resources Board in lieu of submitting reports for vehicles subject to this regulation.

37.6 Reporting Requirements

37.6.1 Commencing with the 2008 model year, each manufacturer shall submit annually, to the Department, by no later than March 1 of the calendar year following the close of the completed model year, a report documenting total deliveries for sale of vehicles in each test group over that model year, in the State.

37.6.2 Commencing with model year 2011, each manufacturer shall submit annually to the Department, by no later than March 1 of the calendar year following the close of the completed model yeara report, prepared according to the procedures in Title 13, CCR Section 1961 calculating the Fleet-wide Non-Methane Organic Gas Exhaust Emission Average for the model year just ended.

37.6.3 For the purposes of determining if vehicles qualify for exemption under section 37.4, the Department may require any motor vehicle manufacturer or dealer of vehicles subject to this regulation to submit any documentation the Department deems necessary to the effective administration and enforcement of this regulation.

37.7 Enforcement

37.7.1 The Department may conduct inspection and surveillance of new and used motor vehicles for the purposes of compliance with the requirements set forth in section 37.3.

(a) Inspections by the Department or its agents, pursuant to section 37.7.1 may be conducted on any premises owned, operated, used, leased, or rented by any vehicle dealer. Said inspection may extend to all emission-related parts and operation and may require the on premises operation and testing of an engine or vehicle, and inspection of any related records, including records of emission related part repair performed under warranty.

(b) The Department or its agents may perform functional tests, steady-state tests, and other tests as reasonably necessary. In addition, the California Motor Vehicle Inspection program emissions tests standards in Title 13 CCR 2176, and incorporated herein by reference, applicable to the appropriate model year vehicle, may be used by the Department to verify compliance with section 37.

37.7.2 Any order or enforcement action taken by CARB, to correct noncompliance with any Section of Title 13, which results in the recall of any vehicle pursuant to Title 13 CCR 2109-2135, incorporated herein by reference, shall be applicable to all vehicles subject to this regulation, except where the manufacturer demonstrates to the Department's satisfaction within 21 days of issuance of said CARB action, that said action is not applicable to said vehicles.

37.7.3 Any voluntary or influenced emission-related recall campaign initiated by any manufacturer pursuant to Title 13 CCR 2113 - 2121 shall extend to all applicable vehicles subject to this regulation, except where the manufacturer demonstrates to the Department's satisfaction within 21 days of CARB approval of the campaign, that said campaign is not applicable to said vehicles in Rhode Island.

37.7.4 The Department shall enforce the requirements of this regulation in accordance with Title 13 CCR, and applicable federal and Rhode Island law.

37. 8 Severability

Each subsection of this regulation shall be deemed severable, and in the event that any subsection of this regulation is held invalid, the remainder shall continue in full force and effect.

EFFECTIVE DATE

These Rules and Regulations shall take effect twenty (20) days after filing with the secretary of State's Office. The foregoing "Air Pollution Control Regulation No. 37 "Rhode Island's Low Emission Vehicle Program", after due notice, are hereby adopted and filed with the Secretary of State this 21st day of December, 2004 to become effective twenty (20) days thereafter, in accordance with the provisions of Chapters 23-23-5 (12) and (22), 42-35, 42-17.1, 42-17.6, of the General Laws of Rhode Island of 1956, as amended.

__________________________________

Frederick J. Vincent, Acting Director
Department of Environmental Management

Notice Given on: October 15, 2004
Public Hearing held: November 15, 2004
Filing Date: December 21, 2004
Effective Date: January 10, 2004