**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LINCOLN-DODGE, INC.; SMITHFIELD CHRYSLER JEEP, INC.; SIMON CHEVROLET-BUICK, LTD.; PAUL MASSE CHEVROLET, INC.; PAUL MASSE PONTIAC-CADILLAC-GMC, INC.; DELUXE AUTO SALES, INC.; TASCA AUTOMOTIVE GROUP, INC.; HURD CHEVROLET, INC.; HURD BUICK-PONTIAC-GMC TRUCK, INC.; ALLIANCE OF AUTOMOBILE MANUFACTURERS; DAIMLERCHRYSLER CORPORATIONL and GENERAL MOTORS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his Official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | : | Case No. 06-70T |
| | | **Consolidated with** |
| THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS<br><br>Plaintiff,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his Official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | : | Case No. 06-69T |

**MEMORANDUM AND ORDER**

ERNEST C. TORRES, Senior U.S. District Judge.

**Introduction**

These two consolidated actions for declaratory judgment were brought by several automobile manufacturers and Rhode Island automobile dealers against the Rhode Island Department of Environment Management ("RIDEM"). The plaintiffs seek a declaration that a regulation adopted by RIDEM that establishes greenhouse gas emission standards for new automobiles is, among other things, preempted by the Energy Policy and Conservation Act ("EPCA"), Pub.L. No. 94-163, 89 Stat. 871 (1975) (codified as amended in 42 U.S.C. and 49 U.S.C.).

RIDEM has moved to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that this Court lacks subject matter jurisdiction because the plaintiffs' claims are not "ripe" for adjudication inasmuch as the Regulation does not take effect unless and until the Environmental Protection Agency ("EPA") issues a waiver pursuant to the Clean Air Act ("CAA"), Pub.L. No. 88-206, 77 Stat. 392 (1963), 42 U.S.C.A. §§ 7401-7571q (West 2003). For reasons hereinafter stated, I find that the plaintiffs' claims are ripe for review; and, therefore, the defendant's motion to dismiss is denied.

Similar actions have been brought in at least two other federal district courts. Central Valley Chrysler-Jeep v.

Witherspoon, 456 F.Supp.2d 1160 (E.D.Cal. 2006), No. CV F 04-6663 AWI LJO; Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie, 508 F.Supp.2d 295 (D.Vt. 2007), Nos. 2:05-CV-302, 2:05-CV-304.

## The Statutory Framework

A. The Clean Air Act ("CAA")

Section 7521 of the CAA requires the Administrator of the EPA to adopt regulations that "prescribe . . . standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1).

The CAA expressly provides that it preempts the adoption or enforcement of emission standards for new motor vehicles by any State or political subdivision, other than the State of California. 42 U.S.C. § 7543. California is excepted because it had adopted emissions standards prior to the CAA's enactment in 1966, but the CAA provides that, before California may enforce standards that differ from those established by EPA, it must obtain a waiver from the EPA Administrator. A waiver request may be denied if the Administrator finds that:

(1) The California standard is arbitrary and capricious;

(2) The California standard is not necessary to enable

California to deal with compelling and extraordinary conditions; or

(3) The California standard is not consistent with CAA § 7521, which identifies several factors that must be considered.

See Id. One of these factors listed in § 7521 is whether the regulation will "take effect after such period as the Administrator finds necessary to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period." 42 U.S.C. § 7521(a)(2).

Since its amendment in 1977, the CAA has allowed other states to adopt the California standards for new automobiles sold within their borders, without obtaining a waiver, if:

(1) Such standards are identical to California standards for which a waiver has been obtained, and

(2) The standards are established by both California and the adopting State at least two years before the beginning of the model year to which they apply.

See 42 U.S.C. § 7507. Although the CAA does not prevent other States from adopting California's standards before California has obtained a waiver from EPA, those states may not enforce the standards until then. Because the waiver process may take some time, some States, including Rhode Island, have adopted California's standards before a waiver has been obtained but have made enforcement contingent upon the issuance of a waiver.

B. <u>The Energy Policy and Conservation Act ("EPCA")</u>

EPCA establishes mandatory corporate average fuel economy ("CAFE") standards for new motor vehicles which require that passenger automobiles manufactured after 1984 average 27.5 miles per gallon. 49 U.S.C. § 32902(b). EPCA authorizes the Secretary of Transportation (the "Secretary") to amend that standard to a level that the Secretary determines to be the "maximum feasible average fuel economy level for that model year," 49 U.S.C. § 32902(c)(1). EPCA provides that "[w]hen deciding maximum feasible average fuel economy under this section, the Secretary of Transportation shall consider technological feasibility, economic practicability, the effect of other motor vehicle standards of the Government on fuel economy, and the need of the United States to conserve energy," 49 U.S.C. § 32902(f). The Secretary has delegated that authority to the National Highway Traffic Safety Administration ("NHTSA"). 49 C.F.R. § 1.50(f).

Like the CAA, EPCA expressly states that it preempts any state laws or regulations related to fuel economy standards. More specifically, EPCA provides:

> When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a state may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

<u>Id</u>. § 32919(a).

**Facts**

On September 24, 2004, California, relying on its exemption from preemption under the CAA, adopted regulations limiting the greenhouse gas emissions from new motor vehicles sold in that state and subsequently applied to EPA for a waiver permitting California to enforce the regulations.

In December 2005, pursuant to § 177 of the CAA, RIDEM amended Air Pollution Control Regulation 37, Rhode Island's Low Emissions Vehicle Program, which contains emission standards that RIDEM claims are identical to those adopted by California. The Rhode Island Regulation requires reductions in carbon dioxide and other greenhouse gases emitted by new automobiles beginning with model year 2009, which will begin appearing in dealers' showrooms around the middle of 2008.

Although RIDEM has not yet sought to enforce the Regulation, the plaintiffs brought these claims because they say that substantial lead time would be required to fully develop and incorporate the technology necessary to comply. As already stated, the plaintiffs' principal claim is that the Rhode Island Regulation is preempted by EPCA because the only way to reduce greenhouse gas emissions is by altering fuel economy standards.

In moving to dismiss, RIDEM argues that the ripeness requirement of Article III has not been satisfied because the Rhode Island Regulation will not take effect unless and until EPA grants

California's request for a CAA waiver; and, until then, the plaintiffs will suffer no injury.

**Standard of Review**

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court is not limited to what is set forth in the pleadings, but instead may take evidence to determine whether sufficient facts support its jurisdiction. Ernst & Young v. Depositors Economic Protection Corp., 862 F.Supp. 709, 713 (D.R.I. 1994).

The procedure for deciding the motion depends on whether the jurisdictional facts are "intertwined with the merits of the plaintiff's claim." Torres-Negron v. J&N Records, LLC, 504 F.3d 151, at *9 (1st Cir. 2007). If "the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action," a court should apply the standard applicable to a Rule 56 motion for summary judgment and should deny the motion if there is a genuine dispute with respect to a material jurisdictional fact. Id. at *10. In most cases, however, where the jurisdictional facts are not "intertwined with the merits of the plaintiff's claim," a court is free to weigh the evidence and make findings with respect to relevant to the jurisdictional facts without considering the merits of the claim. Id.

In this case, the factual issue on which subject matter

jurisdiction turns is whether, at the present time, the Rhode Island Regulation has caused or threatens to cause an actual injury to the plaintiffs. Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973). This issue is not intertwined with the merits of the plaintiffs' challenge to the Regulation's validity. Indeed, as discussed below, the plaintiffs' challenge is primarily legal, rather than factual. The jurisdictional issue can be resolved simply by examining the affidavits and documents submitted by the parties without considering the merits of the plaintiffs' claims at this time.

## **Analysis**

The doctrine of ripeness is rooted in Article III § 2 cl. 1 of the United States Constitution, which limits the jurisdiction of the federal courts to "cases and controversies." Where actions of administrative agencies are challenged, the doctrine's "basic rationale is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).

In order to satisfy the ripeness requirement, a plaintiff

"must allege some threatened or actual injury...," Linda R.S., 410 U.S. at 617, that is "real and immediate," Blum v. Yaretsky, 457 U.S. 991, 1000 (1982), as opposed to merely "conjectural" or "hypothetical," O'Shea v. Littleton, 414 U.S.488, 494 (1974). See Medical Malpractice Joint Underwriting Ass'n of Rhode Island v. Paradis, 756 F.Supp. 669, 674 (D.R.I. 1991). In deciding whether a case is ripe, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories, 387 U.S. at 148-49. The burden of establishing both fitness and hardship rests on the plaintiff. R.I. Assoc. of Realtors v. Whitehouse, 199 F.3d 23, 33 (1st Cir. 1999).

A. Fitness for Review

The First Circuit has said that "the critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 536 (1st Cir. 1995) (quoting Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992). Answering that question "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed."

Ernst & Young, 45 F.3d at 535.

In a case where an administrative regulation is being challenged, the finality inquiry focuses on whether the regulation constitutes "final agency action," Abbott Laboratories, 387 U.S. at 149; the definiteness inquiry focuses on the probability that the regulation will be applied to the plaintiff, Ernst & Young, 45 F.3d at 538; and the factual sufficiency inquiry focuses on whether the issue presented is "purely legal" and "will not be changed by further factual development," Narragansett, 19 F.3d at 693.

Here, it is clear that the Rhode Island Regulation constitutes "final agency action;" that it will be applied to the plaintiffs if and when California obtains a CAA waiver from EPA; and that no future facts are likely to alter the legal questions presented. However, RIDEM argues that the fitness for review prong of the ripeness test has not been satisfied because California's waiver application may be denied; and, therefore, the possibility that the Regulation will be applied to the plaintiffs is too speculative.

However, the "probability" of application inquiry is only one of the subsidiary inquiries made in determining "fitness for review." Moreover, that inquiry does not require a showing of absolute certainty that the regulation will be applied to a plaintiff.

RIDEM's reliance on the First Circuit opinion in Ernst & Young, 45 F.3d 530 (1st Cir. 1995), is misplaced because, in that case, where a party involved in negotiations to settle a tort case sought a declaration regarding the constitutionality of a statute limiting a nonsettling tort-feasor's right of contribution against joint tort-feasors, the court cited eight hypothetical events that had to occur before the plaintiffs would be harmed. Id. at 538. Thus the case was not ripe because it depended on such a "lengthy chain of speculation" and "serendipitous events that may not occur as anticipated or may not occur at all." Id.

By contrast, this case involves only one contingency, namely, whether California eventually will succeed in its quest for a waiver. That possibility has been diminished by the fact that, on December 19, 2007, just as this Memorandum and Order was about to be filed, EPA rejected California's waiver application. However, EPA's decision may be appealed, especially in light of the Supreme Court's recent holding in Massachusetts v. Environmental Protection Agency, 127 S.Ct. 1438 (2007), that EPA has both the authority and the responsibility to regulate greenhouse gas emissions.

B. Hardship

Any uncertainty regarding the probability that the Rhode Island Regulation will be applied to the plaintiffs is outweighed by the hardship that the existence of the Regulation already

imposes on the plaintiffs.

The manufacturers have submitted uncontradicted evidence that compliance with the Regulation will require a "lead-time" of at least four years and the expenditure of substantial sums of money to develop technology, redesign models, and retool production facilities. Therefore, because the Regulation would apply to automobiles manufactured during model year 2009, the plaintiffs are placed in the untenable position of either incurring the cost of attempting to comply with a Regulation that might not take effect and might be invalid or subjecting themselves to potentially severe consequences if they do not comply and the Regulation takes effect. In fact, the manufacturers have presented evidence that they already have begun incurring some of the costs of attempted compliance.

In Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n, 461 U.S. 190 (1983), the Supreme Court recognized that "in special circumstances, an injury sufficient to impute ripeness may [] be found when a plaintiff must presently decide to expend substantial resources which turn out to be wasted, depending on later clarification of the law." Id. at 1721. In that case, the Court held that a group of utility companies could challenge a state law imposing a moratorium on the construction of nuclear power plants because, due to the long lead-time and the millions of dollars that had to be expended to design and license a nuclear

power plant, the utilities would suffer a significant hardship if they were required to go through the process before being able to challenge the moratorium's validity. Id.

Similarly, in Abbott Laboratories, 387 U.S. 136 (1967), it was held that drug manufacturers could bring an action seeking a declaratory judgment that new drug-labeling regulations promulgated by the Secretary of Health, Education, and Welfare and the Commissioner of Food and Drugs were null and void even though attempts had not yet been made to enforce the regulation. Id. at 138-39. The Abbott Laboratories court stated:

> To require [the manufacturers] to challenge these regulations only as a defense to an action brought by the Government might harm them severely and unnecessarily. Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the . . . Declaratory Judgment Act must be permitted . . . .

Id. at 153; see also Reno v. Catholic Social Services, 509 U.S. 43, 57 (1993) (explaining that the hardship inquiry asks whether "the challenged regulations presented plaintiffs with the immediate dilemma to choose between complying with the newly imposed, disadvantageous restrictions and risking serious penalties for violation.").

Here, adoption of the Rhode Island Regulation imposes the same kind of hardship on the manufacturers that the Supreme Court

described in Pacific Gas and Abbott Laboratories. The Regulation requires the manufacturers to either expend considerable resources, now, in an effort to comply, or to risk the substantial consequences of non-compliance if they do not. Accordingly, the Regulation creates a "threatened or actual injury" that is "real and immediate" and that makes this case ripe for review.

**Conclusion**

For all of the foregoing reasons, the defendant's motion to dismiss is DENIED.

IT IS SO ORDERED:

Ernest C. Torres

Ernest C. Torres
Senior United States District Judge

Date: December 21, 2007