**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,

Plaintiff,

v.

W. MICHAEL SULLIVAN, in his official capacity as Director of the Rhode Island Department of Environmental Management,

Defendant.

-----------------------------------------------------------------------

LINCOLN DODGE, INC. *et al.*,

Plaintiffs,

v.

W. MICHAEL SULLIVAN, in his official capacity as Director of the Rhode Island Department of Environmental Management,

Defendant.

**Civil Action Nos. 06-69 and 06-70 T (Consolidated)**

**PLAINTIFFS' CONSOLIDATED OBJECTIONS TO DEFENDANT'S SECOND MOTION TO DISMISS**

Plaintiffs hereby object to defendant's motion for judgment on the pleadings and to dismiss filed April 10, 2008. In support of their objections, plaintiffs rely on the accompanying consolidated memorandum in support and the exhibits to their memorandum.

**Request for Oral Argument**

Pursuant to LR Cv 7(e) of this Court, plaintiffs request oral argument. Plaintiffs estimate that thirty (30) minutes will be required for oral argument.

Dated: April 28, 2008

Respectfully submitted,

/s/ Patricia K. Rocha
Patricia K. Rocha (# 2793)
John A. Tarantino (# 2586)
ADLER POLLOCK & SHEEHAN PC
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
*Counsel for All Plaintiffs in No. 06-69*

/s/ Joseph V Cavanagh, Jr.
Joseph V. Cavanagh, Jr.(# 1139)
Kristin E. Rodgers (# 4842)
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903
Tel: (401) 831-8900
*Counsel for The Association of International Automobile Manufacturers*

Stuart A. C. Drake
Andrew B. Clubok
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
*Counsel for Chrysler LLC, General Motors Corporation, and Alliance of Automobile Manufacturers*

Raymond B. Ludwiszewski
Charles H. Haake
*Admitted Pro Hac Vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 955-8500
*Counsel for The Association of International Automobile Manufacturers*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,

Plaintiff,

v.

W. MICHAEL SULLIVAN, in his official capacity as Director of the Rhode Island Department of Environmental Management,

Defendant.

-------------------------------------------------------------------

LINCOLN DODGE, INC. *et al.*,

Plaintiffs,

v.

W. MICHAEL SULLIVAN, in his official capacity as Director of the Rhode Island Department of Environmental Management,

Defendant.

**Civil Action Nos. 06-69 and 06-70 T (Consolidated)**

**PLAINTIFFS' CONSOLIDATED MEMORANDUM IN SUPPORT OF OBJECTIONS TO DEFENDANT'S SECOND MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

A. The *Green Mountain* Litigation ........................................ 2

B. The *Central Valley* Litigation ........................................ 4

III. ARGUMENT ........................................ 6

A. The Doctrine of Non-Mutual Defensive Collateral Estoppel Does Not Preclude Consideration of the Merits of the Preemption Issues Presented in these Cases. ........................................ 8

B. The Rhode Island Dealers Have A Right To Litigate Their Preemption Claims In This Court. ........................................ 13

C. Non-Mutual Collateral Estoppel Does Not Apply When It Would Limit Full Consideration of the Merits of Important Legal Issues of Preemption Within the Federal System. ........................................ 15

D. Preclusion Based on the Two Prior District Court Decisions Would Be Particularly Improper in Light of First Circuit Preemption Doctrine. ........................................ 17

E. The Prior District Court Decisions Did Not Decide the Clean Air Act Issues Adversely to Plaintiffs and Thus Do Not Bar Litigation of Clean Air Act Preemption in This Court. ........................................ 19

CONCLUSION ........................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) .......... 10, 13, 16, 17

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 13

*American Medical Int'l, Inc. v. Sec'y of Health, Educ. & Welfare*,
677 F.2d 118 (D.C. Cir. 1981) .......... 16

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*,
402 U.S. 313 (1971) .......... 13, 16

*Cardillo v. Zyla*,
486 F.2d 473 (1st Cir. 1973) .......... 9

*Central Valley Chrysler Jeep, Inc., et al. v. Goldstene*,
529 F. Supp. 2d 1151 (E.D. Cal. 2007) .......... 5, 6

*Central Valley Chrysler-Jeep, Inc. v. Witherspoon*,
456 F. Supp. 2d 1160 (E.D. Cal. 2006) .......... 4, 6

*Central Valley Chrysler-Jeep, Inc. v. Witherspoon*,
No. CV04-6663, 2007 WL 135688, at *14 (E.D. Cal. Jan. 16, 2007) .......... 4

*Central Valley Chrysler-Plymouth et al. v. California Air Resources Bd.*,
2002 U.S. Dist. LEXIS 20403 (June 11, 2002) .......... 6

*Coeur D'Alene Tribe of Idaho v. Hammond*,
384 F.3d 674 (9th Cir. 2004) .......... 16

*Commissioner v. Sunnen*,
333 U.S. 591 (1948) .......... 17

*DeCosta v. Viacom*,
758 F. Supp. 807 (D. R.I. 1991),
*rev'd on other grounds*, 981 F.2d 602 (1st Cir. 1992) .......... 12

*Divine v. CIR*,
500 F.2d 1041 (2d Cir. 1974) .......... 10, 16

*DuPont v. Train*,
430 U.S. 112 (1977) .......... 16

**Page(s)**

*Gonzalez v. Banco Cent. Corp.*,
27 F.3d 751 (1st Cir. 1994) ........ 14, 15

*Green Mountain Chrysler Plymouth Dodge Jeep, et al. v. Crombie*,
508 F. Supp. 2d 295 (2007) ........ 2, 3, 18

*Grella v. Salem Five Cent. Sav. Banks*,
42 F.3d 26 (1st Cir. 1994) ........ 9, 12

*Hatian Centers Council Inc. v. McNary*,
969 F.2d 1350 (2d Cir 1992),
*rev'd on other grounds*, 509 U.S. 155 (1992) ........ 11

*Hoult v. Hoult*,
157 F.3d 29 (1st Cir. 1998) ........ 8

*In re Public Serv. Co. of New Hampshire*,
848 F. Supp. 318 (D. R.I. 1994) , *aff'd*, 43 F.3d 763 (1st Cir. 1995) ........ 12

*In re Sonus Networks, Inc., Shareholder Derivative Litigation*,
499 F.3d 47 (1st Cir. 2007) ........ 12

*Johnson v. Mahoney*,
424 F.3d 83 (1st Cir. 2005) ........ 13

*Kania v. Fordham*,
702 F.2d 475 (4th Cir. 1983) ........ 11

*Keystone Shipping Co. v. New England Power Co.*,
109 F.3d 46 (1st Cir. 1997) ........ 9

*Kyricopoulos v. Town of Orleans*,
967 F.2d. 14 (1st Cir. 1992) ........ 13

*Lanphere Enterprises, Inc. v. Doorknob Enterprises, LLC*,
145 Fed. Appx. 589 (9th Cir. 2005) ........ 14

*Lincoln Dodge, Inc., et al. v. Sullivan*,
Nos. 06CV00070, 06CV00069, 2007 WL 4577377 (D. R.I. Dec. 21, 2007) ........ 1, 2

*Lummus Co. v. Commonwealth Oil Refining Co.*,
297 F.2d 80 (2d Cir. 1961) ........ 12

*Massachusetts v. EPA*,
127 S.Ct. 1438 (2007) ........ 5

*Miller Hydro Group v. Popovitch*,
793 F. Supp. 24 (D. Me. 1992) ........ 9

**Page(s)**

*Monarch Life Ins. Co. v. Ropes & Gray*,
65 F.3d 973 (1st Cir. 1995)........................................................................... 9, 13

*Montana v. United States*,
440 U.S. 147 (1979)........................................................................................ 11

*Motor Vehicle Manufacturers Association v. New York State Department of Environmental Conservation*,
17 F.3d 521 (2d Cir. 1994)............................................................................... 20

*New Hampshire Motor Transport Ass'n v Rowe*,
448 F.3d 66 (1st Cir. 2006), *aff'd*, 128 S.Ct. 989 (2008).......................................... 18, 19

*NLRB v. Donna-Lee Sportswear Co., Inc.*,
836 F.2d 31 (1st Cir. 1987)....................................................................... 9, 12, 14

*North Atlantic Distribution, Inc. v. Teamsters Local Union No. 430*,
No. 05-3482, 2007 WL 2377029 (D. R.I. Aug. 15, 2007)............................................... 15

*P.I. Enterprises, Inc. v. Cataldo*,
457 F.2d 1012 (1st Cir. 1972)........................................................................... 13

*Parklane Hoisery Co., Inc. v. Shore*,
439 U.S. 322 (1978)............................................................................... 13, 16, 20

*People's Liquor Warehouse-Hopkinton, Inc. v. Department of Business Regulation*,
2007 R.I. Super. LEXIS 78 (xxxx)....................................................................... 14

*Pharmaceutical Care Mgmt. Ass'n v. Dist. of Columbia*,
No. 07-7062, 2008 WL 1757553 (D.C. Cir. Apr. 18, 2008).......................... 10, 13, 16, 17

*Sanchez-Laureno v. Puerto Rico*,
2008 WL 542962 (D. P.R. 2008)......................................................................... 13

*Siano v. Justices of Massachusetts*,
698 F.2d 52 (1st Cir. 1983)............................................................................... 13

*Southern Pac. R.R. Co. v. United States*,
168 U.S. 1 (1897)............................................................................................ 11

*Troy v. Bay State Computer Group Inc.*,
141 F.3d 378 (1st Cir. 1998)............................................................................... 8

*United States v. Mendoza*,
464 U.S. 154 (1984)................................................................................ 10, 13, 16

*United States v. Moser*,
266 U.S. 236 (1924)..................................................................................... 15, 16

**Page(s)**

*United States v. Stauffer*,
464 U.S. 165 (1984) ........ 11, 12, 16

*Wade v. Brady*,
460 F. Supp. 2d 226 (D. Mass. 2006) ........ 8, 10, 13, 17

*Whitehall Co., Ltd. v. Barletta*,
404 Mass. 497 (Mass. 1989) ........ 13

**Statutes**

42 U.S.C. § 7507 ........ 20

42 U.S.C. § 7543(a) ........ 20

42 U.S.C. § 7543(b) ........ 3, 20

49 U.S.C. § 32902(a) ........ 7

49 U.S.C. § 32902(b) ........ 7

49 U.S.C. § 32919(a) ........ 2, 7, 18

Pub. L. No. 110-140 § 102, 121 Stat. 1492 (2007) ........ 7

**Regulations**

71 Fed. Reg. 17,566, 17,654, 17,667 (Apr. 6, 2006) ........ 3, 6

73 Fed. Reg. 12,156 (Mar. 6, 2008) ........ 6

**Other Authorities**

Restatement (Second) of Judgments §§ 27-29 (1982) ........ passim

**Briefs**

Brief of the United States as Amicus Curiae,
*Green Mountain Chrysler-Plymouth-Dodge-Jeep, et al. v. Crombie, et al.*,
Case No. 07-4342, at 14-19 (2d Cir. Apr. 16, 2008) ........ 4

## I. INTRODUCTION

These two consolidated actions present the first and only challenges to the legality of the Rhode Island motor vehicle greenhouse gas standards. Plaintiffs seek to establish that those standards are preempted by two statutes -- the federal Clean Air Act, and the federal Energy Policy and Conservation Act ("EPCA"). In December 2007, the Court found plaintiffs' claims to be ripe and properly before the Court for decision, and it denied a motion to dismiss. *Lincoln Dodge, Inc., et al. v. Sullivan*, Nos. 06CV00070, 06CV00069, 2007 WL 4577377 (D.R.I. Dec. 21, 2007). As indicated at the pre-motion conference held last month, plaintiffs are prepared to present their claims by way of a motion or motions for summary judgment.

Rather than join issue on the merits, defendant has now filed a second motion to dismiss. That motion asserts that decisions on preemption claims in cases in district courts in Vermont and California collaterally estop plaintiffs from litigating the merits of their claims against the Rhode Island regulation. The Vermont and California district court decisions have not been subjected to appellate review, and the defendant in this case has not participated in those cases.

Defendant's new motion to dismiss has no precedent to support it. Defendant's motion seeks what is called non-mutual, defensive collateral estoppel. That type of collateral estoppel has never been allowed by the Supreme Court or any other federal court of appeals in a case like the cases before this Court. The outcome defendant seeks would freeze the development of the law on the important legal issues of preemption presented by these cases, and would prevent this Court and the First Circuit from ever applying the preemption doctrine developed in this Circuit to the specific claims presented here.

With these cases now in their twenty-sixth month since filing, it is time for defendant's Rule 12 practice to come to an end. Defendant's motion should be denied and the Court should entertain motions for summary judgment on the merits.

## II. BACKGROUND

Plaintiffs begin with a brief summary of the decisions in Vermont and California and a report on the current status of those cases.

### A. The *Green Mountain* Litigation

The first court to address the merits of the federal preemption claims presented by a state greenhouse gas regulation was the U.S. District Court for the District of Vermont (Sessions, C.J.). *Green Mountain Chrysler Jeep Plymouth Dodge, et al. v. Crombie*, Case Nos. 2:05-CV-302 and 304 (consolidated). The evidence offered in the *Green Mountain* trial focused on the issue of preemption under EPCA, which prohibits adoption or enforcement of state regulations "related to" fuel economy standards.[1]

The Vermont district court accepted the evidence demonstrating that the Vermont greenhouse gas regulation was expected by the Vermont regulators to require increases in the fuel economy of vehicles sold in Vermont. As the district court framed the legal issues, however, that evidence was not relevant to the legal issues presented in the cases before it — indeed, according to the Vermont court, "preemption doctrines d[id] not apply" to the *Green Mountain* cases. *See Green Mountain Chrysler Plymouth Dodge Jeep, et al. v. Crombie*, 508 F. Supp. 2d 295, 350 (2007). The Vermont court concluded that if the U.S. Environmental Protection Agency ("EPA") waived preemption for a California greenhouse gas regulation under

[1] EPCA's preemption provision, 49 U.S.C. § 32919(a), is quoted in *Lincoln Dodge*, 2007 WL 4577377 *2 .

the Clean Air Act, the California regulation and any counterpart regulation in another State acquired the status of a federal regulation. Once such a state regulation had a Clean Air Act waiver, the district court concluded, the preemption provision in EPCA would not apply. *Id.* at 343-348.[2] The district court did not reach the merits of plaintiffs' claims under the Clean Air Act, but held in a footnote that the Clean Air Act claim was "moot" because counsel for the Vermont defendants said Vermont would not enforce the standards without a Clean Air Act waiver. *Id.* at 343 n.50.

The Vermont district court's decision has been appealed to the Second Circuit, and briefing is now under way. Appellants in *Green Mountain* argue *inter alia* that the district court's statutory analysis overlooks language in the Clean Air Act limiting EPA's power to waive preemption to the specific preemption provisions in the Clean Air Act. Appellants also argue that the district court improperly ignored a published opinion of the National Highway Traffic Safety Administration ("NHTSA") finding that state greenhouse gas regulations are preempted by EPCA -- an opinion that the Vermont district court neither cited nor discussed.[3] Appellants also challenge the court's dismissal of their Clean Air Act counts.

Amicus briefs urging reversal have been filed in the Second Circuit by the United Automobile Workers, the Insurance Institute for Highway Safety, and the National Automobile Dealers Association. The United States government has also filed a brief. The United States'

---

[2] The Vermont district court also held that if federal preemption doctrines did apply to the case, the Vermont regulation would not be preempted by EPCA. The district court found that there was a direct correlation between the primary greenhouse gas regulated by the Vermont rule (carbon dioxide) and fuel consumption, and thus between carbon dioxide and fuel economy. *Green Mountain*, 508 F. Supp. 2d at 352. Nevertheless, the district court found no preemption under EPCA, holding that Congress could not have intended that a waived emissions standard would ever be "related to fuel economy standards" under EPCA's express preemption provision. *Id.* at 354.

[3] *See* 42 U.S.C. § 7543(b) (permitting EPA to waive the preemption that would otherwise apply under "this section," *i.e.*, under the Clean Air Act); 71 Fed. Reg. 17,566, 17,654, 17,667 (Apr. 6, 2006) (state greenhouse gas regulations (Continued…)

brief suggests that the claims presented in the *Green Mountain* litigation may no longer need to be decided, in light of EPA's denial of a Clean Air Act waiver. On the merits, the United States' brief notes the district court "sidestepped" the undisputed fact that the Vermont regulation would require vehicle manufacturers to increase fuel economy in order to comply with the greenhouse gas standards, and calls the district court's statutory analysis was "deeply flawed."[4]

### B. The *Central Valley* Litigation

The case challenging the California greenhouse gas regulation remains pending in the U.S. District Court for the Eastern District of California. *Central Valley Chrysler-Jeep, Inc. v. Goldstene,* No. CV04-6663.

In September 2006, the California district court (Ishii, J.) denied the California defendant's motion for judgment on the pleading. The *Central Valley* court held that a Clean Air Act waiver would not bar preemption challenges to the California standards under EPCA -- and thus established a position at odds with the analysis adopted by the *Green Mountain* court a year later. *Central Valley Chrysler-Jeep, Inc. v. Witherspoon*, 456 F. Supp. 2d 1160, 1172-74 (E.D. Cal. Sep. 25, 2006). Four months later, the California district court denied a motion to dismiss on ripeness grounds, similar to the motion denied by this Court in December 2007, and entered a declaratory judgment holding that the California regulation was preempted unless EPA granted a waiver of Clean Air Act preemption. *Central Valley Chrysler-Jeep, Inc. v. Witherspoon,* No. CV04-6663, 2007 WL 135688, at *7-9, 15-16 (E.D. Cal. Jan. 16, 2007).

---

are "expressly preempted [by EPCA,] … would frustrate the objectives of Congress … and conflict with the efforts of NHTSA" to administer the national fuel economy program).

[4] *See* Brief of the United States as Amicus Curiae, *Green Mountain Chrysler-Plymouth-Dodge-Jeep, et al. v. Crombie, et al.*, Case No. 07-4342, at 14-19 (2d Cir. Apr. 16, 2008) (attached hereto as Exhibit A).

In the fall of 2007, the California defendant sought reconsideration of the *Central Valley* court's September 2006 ruling on the merits of the EPCA preemption claim. In December 2007, the district court reversed itself and granted summary judgment in favor of the California defendant on the EPCA preemption claims. The district court held that the EPCA's preemption provision would not bar a state greenhouse gas regulation even if that regulation required "substantial increases" in fuel economy so long the increases were "incidental" to objectives that would not be preempted by EPCA. *Central Valley Chrysler Jeep, Inc., et al. v. Goldstene*, 529 F. Supp. 2d 1151, 1174, 1176 (E.D. Cal. 2007).

Significantly, the California district court rejected the Vermont district court's view that an EPA waiver under the Clean Air Act federalized a California emission standard. *See Goldstene*, 529 F. Supp. 2d at 1165 (noting that *Green Mountain* decision "never actually offers a legal foundation" for its Clean Air Act analysis). The California district court read the Supreme Court's decision in *Massachusetts v. EPA*, 127 S.Ct. 1438 (2007), to require reconsideration of its earlier analysis. Noting that the *Massachusetts* decision authorized EPA to regulate greenhouse gas emissions, the California district court assumed that EPA's regulatory powers under the Clean Air Act and those of California should be treated as coterminous, and that the express preemption provision in EPCA "should be given a narrow interpretation." *Goldstene*, 529 F. Supp. 2d at 1174.

The California district court recognized that the California regulation would require the control of carbon dioxide, the principal motor vehicle greenhouse gas, and for purposes of the summary judgment motions, the court assumed that the California standards would require significant increases in fuel economy. *See id.* at 1176. But, because the California regulations contained provisions that in theory permitted manufacturers to "mitigat[e]" the fuel economy

improvements required by greenhouse gas standards by regulating other types of greenhouse gases, and had a purpose other than regulating fuel economy, the district court found that the California standards could not be treated as standards "relating to fuel economy standards" and preempted by EPCA. *Id.* at 1157, 1176.[5]

Following the *Central Valley* court's latest decision on the merits, EPA denied California's request for a waiver of Clean Air Act preemption.[6] Plaintiffs and plaintiff-intervenors in the *Central Valley* case have accordingly sought a permanent injunction under the Clean Air Act. The defendant in *Central Valley* opposes that request, and the case has been calendared for a hearing on May 12, 2008.

## III. ARGUMENT

The legal claims that plaintiffs ask the Court to address on the merits rest on facts that can no longer be considered to be in any genuine dispute. With respect to the EPCA claims, there are two key facts. The first is that if the Rhode Island regulation takes effect, it will require increases in the fuel economy of the fleet of vehicles sold in Rhode Island. The second is that those increases would exceed the increases in fuel economy mandated by Congress.

---

[5] Like the Vermont district court, the California district court did not address NHTSA's opinion published in the *Federal Register* explaining why the federal government considers state greenhouse gas regulations to be preempted by EPCA, regardless of whether those standards have received a Clean Air Act waiver. *See* 71 Fed. Reg. at 17,669. The California district court's earlier decision, however, had determined that NHTSA's opinion was entitled to some weight and consideration on the scope of EPCA preemption. *See Central Valley*, 456 F. Supp. 2d at 1168-1170.

The California district court's December 2007 decision is also inconsistent with a prior ruling of the same court in another case, in which the Eastern District of California held that a state regulation affecting fuel economy was not saved from EPCA preemption even if the purpose of the regulation was to achieve goals other than fuel economy increases and imposed requirements in addition to regulation of fuel economy. *See Central Valley Chrysler-Plymouth et al. v. California Air Resources Bd*., 2002 U.S. Dist. LEXIS 20403 *12-13 (June 11, 2002). California noticed an appeal in the earlier case. The State then rescinded the regulation challenged in that case after the appeal had been fully briefed and argued, and thus voluntarily mooted the appeal. *See* http://www.arb.ca.gov/msprog/zevprog/zevlitigation.

[6] 73 Fed. Reg. 12,156 (Mar. 6, 2008).

Those two facts in turn frame two pure questions of law under EPCA. The first is whether the greenhouse gas standards contained in the Rhode Island regulation are "related to fuel economy standards," within the meaning of 49 U.S.C. § 32919(a), which is the preemption provision in EPCA. The second question is whether anything in any other provision of EPCA, or in the Clean Air Act, saves the Rhode Island regulation from preemption under EPCA.

Plaintiffs' Clean Air Act claims likewise rest on two very simple facts. The first is that the Rhode Island regulations challenged in this action set standards for emissions from new motor vehicles. The second is that EPA has denied California's request for a waiver of Clean Air Act preemption for the California regulations on which Rhode Island based those standards. Those two indisputable facts frame a pure legal question, which is whether plaintiffs are entitled to an injunction that relieves them from the need to take any action toward compliance with the Rhode Island regulations, now that those regulations have been found to be preempted by EPA.[7]

While the precise legal questions could be presented in other ways, there should be no question that the issues presented here are indeed legal issues. In addition, there can be no doubt that the issues presented have surpassing national importance. Motor vehicle greenhouse gases will be regulated under federal law to the maximum extent possible.[8] The cases in this Court and in the other federal courts hearing the preemption challenges will determine whether federal

---

[7] Counsel for defendant has stated that Rhode Island is not currently "enforcing" the regulations challenged here. Counsel for defendant has not, however, agreed to an appropriate form of relief that would eliminate the need for vehicle manufacturers to take immediate steps toward compliance with those regulations. The lead-time for compliance with these regulations was established in the papers filed in opposition to defendant's first motion to dismiss on ripeness grounds. See ECF Doc. Nos. 15-1, 23-1, 23-2, and 23-3. Defendant is essentially trying to conduct itself as if California's waiver application had never been denied.

[8] In December 2007, Congress passed and the President signed the Energy Independence and Security Act of 2007. Title I of the 2007 Act requires an increase in national fuel economy of at least 40 percent by 2020, which will reduce carbon dioxide emissions from motor vehicles by at least 30 percent compared with the vehicle fleet produced in model year 2006. The statute permits NHTSA to increase the stringency of the federal standards beyond those levels if conditions permit. *See* 49 U.S.C. §§ 32902(a), (b), as amended by Pub. L. No. 110-140 § 102, 121 Stat. 1492, 1498-1501 (2007).

regulations, developed by federal agencies with input from the States and other interested parties, will regulate greenhouse gas emissions, or whether the States will be able to control the process by adopting their own, separate and presumably different regulations.

Against that backdrop, defendant's collateral estoppel motion should fail, on many grounds. Defendant's motion omits any examination of important limitations on the type of collateral estoppel he seeks. With respect to the dealer plaintiffs in Case 06-70, the motion adopts a view of privity that is inconsistent with First Circuit precedent. (*See* pp. 13-15 below.) Even if the motion did not fail that threshold test, defendant has not and cannot identify authorities in the First Circuit or the Supreme Court that have applied collateral estoppel to cases of this type. (*See* pp. 11-13 below.) Finally, defendant does not begin to demonstrates how the doctrine of collateral estoppel would apply to the claims presented here under the Clean Air Act. (*See* pp. 19-20 below.)

### A. The Doctrine of Non-Mutual Defensive Collateral Estoppel Does Not Preclude Consideration of the Merits of the Preemption Issues Presented in these Cases.

As defendant acknowledges, his preclusion claim in this case is governed by the doctrine of non-mutual, offensive collateral estoppel, because he did not participate in the Vermont or California litigation.[9] In the federal system, the use of non-mutual collateral estoppel is cabined by important limitations. The core principles and limitations are captured by the Restatement (Second) of Judgments §§ 27-29 (1982), which has been adopted by various Courts, including the First Circuit.[10]

---

[9] Vermont could certainly have participated in the litigation in other jurisdictions. The State of New York, which has also adopted greenhouse gas regulations, participated fully in the Vermont litigation as a defendant-intervenor.

[10] *See, e.g.*, *Hoult v. Hoult*, 157 F.3d 29, 31 (1st Cir. 1998); *Troy v. Bay State Computer Group Inc.*, 141 F.3d 378, 383 (1st Cir. 1998); *Wade v. Brady*, 460 F. Supp. 2d 226, 240-41 (D. Mass. 2006); *Keystone Shipping Co. v. New*

(Continued…)

As a threshold matter, a party seeking to invoke the doctrine of non-mutual collateral estoppel must establish that '"the party against whom issue preclusion will be applied had a fair opportunity to litigate the issue fully,"' *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 n.8 (1st Cir. 1995) (citation omitted). The movant has to prove that the parties "against whom the plea of estoppel is asserted ... have been a party or in privity with a party to the prior adjudication[s]," *Cardillo v. Zyla*, 486 F.2d 473, 475-76 (1st Cir. 1973). The movant must also demonstrate four other necessary (but not sufficient) elements: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." *Grella v. Salem Five Cent. Sav. Banks*, 42 F.3d 26, 30 (1st Cir. 1994).

Establishing these prerequisites, however, is not sufficient. A court will not apply collateral estoppel in cases of the type covered in sections 28 and 29 of the Restatement (Second) of Judgments. Some of those limitations apply to issues of law — by defendant's admission the issue on which he seeks preclusion here are questions of law, *i.e.*, whether the Rhode Island regulations are preempted by EPCA and the Clean Air Act, and if so, what remedy is proper. While collateral estoppel can sometimes apply to questions of law, the Restatement identifies at least two categories of legal issues for which collateral estoppel is improper. Both those categories are applicable here. The basic principles are summarized below, and are then later applied to the issues presented in these cases. (*See* pp. 15-20.)

***1. Preclusion is not permitted on a non-mutual basis when it could "freeze" development of the law on important national issues litigable in multiple circuits.***

---

*England Power Co.*, 109 F.3d 46, 50-51 (1st Cir. 1997); *NLRB v. Donna-Lee Sportswear Co., Inc.*, 836 F.2d 31, 33-34 (1st Cir. 1987); *Miller Hydro Group v. Popovitch*, 793 F. Supp. 24, 26 (D. Me. 1992).

Non-mutual collateral estoppel is not applied if the issue to be precluded "is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based." Restatement (Second) of Judgments § 29(7) (1982) (quoted in *Wade v. Brady*, 460 F. Supp. 2d 226, 240 (D. Mass 2006)). As the Supreme Court has explained, defendants cannot use non-mutual collateral estoppel when doing so would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue" and thus "deprive [the Supreme] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *United States v. Mendoza*, 464 U.S. 154, 160 (1984).[11] (*See* pp. 15-17 below.) It is also important to note that, given the purposes of the principle established in section 29(7) of the Restatement, it applies to litigation in which a non-governmental party, as well as an agency of the federal government or a state or local government, is the party to be estopped. *See, e.g., Pharmaceutical Care Mgmt. Ass'n v. Dist. of Columbia*, No. 07-7062, 2008 WL 1757553, at *1-2 (D.C. Cir. Apr. 18, 2008); *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007); *Wade v. Brady*, 460 F. Supp. 2d 226, 240 (D. Mass. 2006).

***2. Preclusion is not permitted when doing so would prevent consideration of the merits of an important legal issue in the circuit in which the merits of that issue would otherwise be decided.***

Even when the parties are the same in the prior and the later cases, collateral estoppel is not applied when the issue that would be precluded is "one of law and ... a new determination is

---

[11] *Accord Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007); *Divine v. CIR*, 500 F.2d 1041, 1049 (2d Cir. 1974). For its part, the *Green Mountain* district court (in which the first case following the *Central Valley* litigation was filed) fully expected that the legal issues presented under EPCA would be the subject (Continued…)

warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Restatement (Second) of Judgments § 28(2) (1982). This exception avoids the impropriety of giving preclusive effect to the legal determinations of one Circuit in another Circuit, in which different legal rules apply either because of intervening Supreme Court precedent or because the Circuits have reasonably developed divergent doctrines yet to be reconciled by the Supreme Court. *Cf. United States v. Stauffer*, 464 U.S. 165, 180 n.1 (1984) (White, J., concurring) (Restatement sections 28 and 29 both apply "to litigation . . . where the prevailing legal rule [in the new Circuit] is different from that established in earlier litigation in another jurisdiction").[12] (*See* pp. 17-20 below.)

* * *

Upon review, none of the cases cited in defendant's motion support collateral estoppel in this case, because they do not address the foregoing principles of collateral estoppel that are fundamental to its application in the federal system. Most of defendant's cases involve ***mutual*** collateral estoppel -- *i.e.*, cases in which the parties in a given case were identical in the prior case or legally related to parties in the first case sufficient to establish privity.[13] The instant cases

---

of litigation in multiple circuits, potentially with conflicting outcomes, which would ultimately be subject to Supreme Court review. *See* Exhibit B (Rule 16 conference in Green Mountain, Feb. 14, 2006).

[12] *See also Hatian Centers Council Inc. v. McNary*, 969 F.2d 1350, 1356-57 (2d Cir 1992), *rev'd on other grounds*, 509 U.S. 155 (1992) (invoking section 28's exceptions for questions of law and noting that, "where pure questions of law are presented, courts and commentators both have recognized that the interests of finality and judicial economy may be outweighed by other substantive policies [because] '[t]he interests of courts and litigants alike can be protected adequately by the flexible principles of stare decisis.'") (citation omitted); *Kania v. Fordham*, 702 F.2d 475, 476 n.2 (4th Cir. 1983) ("After *Abood*, it was conceivable that the *Arrington* decision was wrong under current constitutional doctrine; the University, a state instrumentality, should not be allowed to hide behind that judgment with the possible result that individual constitutional liberties are denied. Relitigation of an issue of public importance should not be precluded when there has been 'an intervening change in the applicable legal context.'") (citation omitted).

[13] *See, e.g., Montana v. United States*, 440 U.S. 147, 151, 154-55 (1979) (federal government, which brought a suit against Montana, controlled and directed prior suit by federal contractor against Montana on same tax issue); *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897) (second suit between federal government and same private party over land boundaries); *In re Sonus Networks, Inc., Shareholder Derivative Litig.*, 499 F.3d 47,

(Continued…)

are not such cases, because by any view of the procedural history of Green Mountain and Central Valley, defendant has not participated in those cases.

The one Supreme Court case cited by defendant in his brief discussion of "exceptions" to collateral estoppel -- which is a case involving mutuality and which is thus inapplicable on its face to the cases now before the Court -- acknowledges that application of collateral estoppel to important legal issues is improper if it would risk "freez[ing] the development of the law" on "issues of public importance." *Stauffer Chemical Co.*, 464 U.S. at 173. In *Stauffer*, the Supreme Court allowed estoppel against the United States on a legal issue in a subsequent case with the same party, but took pains to explain the federal government would be able to litigate the same legal issue against other parties in the same or other circuits, and (if circumstances required) perhaps even against the same party in other circuits. *See id*. at 173-174. The type of preclusion allowed in *Stauffer* has no relevance to a motion for non-mutual collateral estoppel, and defendant cannot properly rely on it here.

Defendant's motion cites only three cases where non-mutual collateral estoppel was permitted. Each involved disputes between private parties over private rights; two of those three

---

63-64 (1st Cir. 2007) (because derivative suits are brought on behalf of the corporation, shareholders who brought such a suit against board of directors are in privity with shareholders who previously brought same suit against board of directors); *Grella*, 42 F.3d at 30 (bank complaint for funds against debtor alleging same issue as bank alleged against debtor in request to lift the automatic bankruptcy stay); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 82-83 (2d Cir. 1961) (simultaneous suits in same contract dispute brought by each party against the other ); *Donna-Lee Sportswear Co.*, 836 F.2d at 34-35 (NLRB, which brought enforcement action against a company, in privity with union that brought prior suit against same company on same labor issue); *In re Public Serv. Co. of New Hampshire*, 848 F. Supp. 318, 326 (D. R.I. 1994), *aff'd*, 43 F.3d 763 (1st Cir. 1995) (parties that brought claim against board for misleading statements in solicitation of reorganization plan "were stockholders of [company] and either they or those in privity with them," as well as the board, "actively participated in the confirmation and revocation proceedings"); *DeCosta v. Viacom*, 758 F. Supp. 807, 812 (D. R.I. 1991), *rev'd on other grounds*, 981 F.2d 602 (1st Cir. 1992) (in infringement suit against Viacom that followed earlier suit against CBS, "[t]here is no question that CBS and Viacom are in privity with one another").

dealt with essentially factual questions.[14] The application of collateral estoppel is less troublesome in such cases, or in cases where the specific nature of the legal issues confines them to a single federal judicial district or circuit. *See, e.g., Mendoza*, 464 U.S. at 169; *Pharmaceutical Care Mgmt. Ass'n,* 2008 WL 1757553, at *1-2; *Af-Cap,* 475 F.3d at 1086. The only decision cited in defendant's motion involving non-mutuality and public rights ***declined*** to apply collateral estoppel.[15]

### B. The Rhode Island Dealers Have A Right To Litigate Their Preemption Claims In This Court.

The Rhode Island dealers were not and could not have been parties in the Vermont and California cases. Privity requires a demonstration that a "nonparty either substantially controlled

---

[14] *See, e.g., Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322, 324 (1978) (suit by stockholders against corporation and board involving question whether proxy statement was false and misleading); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 316-17 (1971) (suit by foundation against laboratory involving whether laboratory had infringed in foundation's patent); *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995) (suit by life insurance company against its former counsel involving permissible scope of bankruptcy court's post-confirmation injunction).

[15] *See Wade*, 460 F. Supp. 2d at 240, 243 (quoting Restatement (Second) Judgment § 29(7) & cmt. (i)) ("Where, as here, the defendants in the presentation are different from the defendants in the earlier action, the Restatement has carved out an exception when '[t]he issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based.'"); *see also Allen v. McCurry*, 449 U.S. 90, 95-96 & n.7, 105 & n.25 (1980) (concluding that collateral estoppel may be applied in § 1983 suits, but remanding for a determination of whether exceptions to the collateral estoppel doctrine, such as the "question of law" exception, made application of the doctrine inappropriate); *Whitehall Co., Ltd. v. Barletta*, 404 Mass. 497, 501, 502-503 n.10 (Mass. 1989) (citing Restatement (Second) Judgment § 29) (concluding trial judge should have applied federal preclusion rules -- not state rules -- and remanding for him to consider propriety of applying non-mutual collateral estoppel under § 29 of the Restatement).

There are also numerous cases involving applications of nonmutual collateral estoppel, omitted from defendant's motion, in which preclusion was applied to claims under § 1983 or related claims on issues of fact rather than law. *See, e.g., Johnson v. Mahoney*, 424 F.3d 83, 84, 88, 93-94 (1st Cir. 2005); *Kyricopoulos v. Town of Orleans*, 967 F.2d. 14, 15-16 (1st Cir. 1992); *Siano v. Justices of Massachusetts*, 698 F.2d 52, 57 n.6 (1st Cir. 1983). Plaintiffs in the cases before this Court are not seeking to relitigate factual questions. The balance of the non-mutual preclusion cases involve unusual factual situations in which it would be impossible for another federal court in another circuit to consider the same legal issue. *See, e.g., P.I. Enterprises, Inc. v. Cataldo,* 457 F.2d 1012, 1013 (1st Cir. 1972) (precluding challenge to validity of town ordinance limiting height of buildings where same claim resolved in New Hampshire state court); *Sanchez-Laureno v. Puerto Rico*, No. 07-1172, 2008 WL 542962, *at* *3-5, 7 (D. P.R. 2008) (precluding relitigation of whether law excluding murderers from early release program violated *ex post facto* clause). The scope of the legal issues in the cases before this Court obvious extend beyond a single federal judicial district and a single federal circuit.

a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative." *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994). Defendants do not and cannot contend that the Rhode Island dealers "substantially control[ed]" any plaintiff in the prior actions. This leaves defendants to contend that the Rhode Island dealers were somehow "virtually represented" by plaintiffs in the prior actions.[16]

In the First Circuit, "the theory of virtual representation [is] on a short tether." *Banco Cent. Corp.*, 27 F.3d at 760 ("deploying the theory to justify nonparty preclusion in a broad spectrum of cases ... would threaten the core principles underpinning the due process equation."). Thus, the First Circuit has only found "virtual representation" only when there was

> actual or implied consent to be bound by the results in a prior action, an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues (such as creditors who were found to be represented by a bankruptcy trustee who had a fiduciary relationship to them), familial relationships to link the party and non-party, or

---

[16] Defendant offers three other theories to tie the Rhode Island dealers to the Vermont and California cases, none of which are supported by the cases he cites. First, he contends that the Rhode Island dealers are in privity with the automobile manufacturers because "close, long term business relationships, such as that between manufacturer-supplier and sales-franchisees are sufficient to establish privity." In the single case cited to support that argument, the question turned on the fact that the franchisee could seek indemnity from the franchisor. *See Lanphere Enterprises, Inc. v. Doorknob Enterprises, LLC*, 145 Fed. Appx. 589, 592 (9th Cir. 2005). *Lanphere* is irrelevant to the cases before this Court, where no such indemnity relationship exists. Any losses Rhode Island dealers suffer as a result of the Rhode Island regulation will be borne entirely by them. Defendants also suggest that the Rhode Island dealers are in privity with the Vermont and California dealers. But they have no support for this proposition. The single case they cite for that argument -- a Rhode Island Superior Court decision -- found privity between co-franchisees that were all located in Rhode Island and who all challenged the same Rhode Island regulation. *See People's Liquor Warehouse-Hopkinton, Inc. v. Department of Business Regulation*, 2007 R.I. Super. LEXIS 78, at 2-3, 6-9, 26-27 (2007). Finally, defendants contend the Rhode Island dealers are in privity with the automobile manufacturers because any harm the dealers might suffer is contingent upon and derivative of harms to the vehicle manufacturers. Here again, the sole decision they cite does not apply here. *See Donna-Lee Sportswear Co., Inc.*, 836 F. 2d 31 (1st Cir. 1987). That decision found privity between the NLRB and a union (who had previously sued the defendant company) because the NLRB enforcement action was precipitated by union complaint concerning the same issue that had been resolved against the union by the district court. It was in this regard that the NLRB's "presence in th[e] dispute derive[d] from parties that are clearly bound by the [prior] judgment." *Id*. at 35. *Donna-Lee*'s privity decision had nothing to do with the nature of the harm to the non-party in the first action that is now alleged to be a privity of a party to the first action.

> evidence of tactical maneuvering designed unfairly to exploit technical non-party status in order to obtain multiple opportunities to litigate the same claim.

*North Atlantic Distribution, Inc. v. Teamsters Local Union No. 430*, No. 05-3482, 2007 WL 2377029, at *5 (D. R.I. Aug. 15, 2007) (citation omitted).[17] Defendant has not shown that those criteria are met by the Rhode Island dealers.[18] The Rhode Island dealers' interests are distinct from the interests of the plaintiffs in the Vermont and California actions, and arise entirely from the Rhode Island regulation. This is the only court in which they could maintain suit, and they are entitled to litigate the merits.

### C. Non-Mutual Collateral Estoppel Does Not Apply When It Would Limit Full Consideration of the Merits of Important Legal Issues of Preemption Within the Federal System.

The federal courts have always been wary of applying collateral estoppel to pure questions of law like those presented in these cases, as plaintiffs propose to litigate them.[19] Cases dominated by questions of law come within the "*Moser* exception" to collateral estoppel. *See United States v. Moser*, 266 U.S. 236, 242 (1924) (collateral estoppel "does not apply to unmixed questions of law); Restatement (Second) of Judgments § 29(7) & cmt. (i) (no preclusion if "issue is one of law and treating it as conclusively determined would inappropriately foreclose

---

[17] Defendants' citation to *National Distributors Inc. v. Teamsters Local Union No. 430* on p. 22 of their memorandum is actually a mis-named citation to *North Atlantic Distribution Inc. v. Teamsters Local Union No*. 430, which rejected application of the theory of virtual representation. *See also Gonzalez*, 27 F.3d at 761 ("[V]irtual representation will not serve to bar a nonparty's claim unless ... the balance of the relevant equities tips in favor of preclusion; *id.* at 761 ("The upshot is that ... while identity of interests remains a necessary condition for triggering virtual representation, it is not alone a sufficient condition ....").

[18] Defendant's motion tries to suggest that plaintiffs have engaged in tactical artifice by filing actions in more than one circuit. *See* Deft's Mem. at 21-22 and Deft. Mem. Exh. D. The cases in this Court were filed within 60 days of the adoption of the Rhode Island greenhouse gas standards, just as the Vermont cases were filed as soon as possible after the Vermont regulation was adopted. The Rhode Island regulation could only be challenged in this judicial district. There was no gamesmanship.

[19] As indicated at p. 7 above, plaintiffs do not propose that this Court reconsider any factual issues decided by the Vermont district court, and are prepared to litigate their claims substantially on the same factual determinations made by the Vermont court.

[the] opportunity for obtaining reconsideration of the legal rule [on] which it was based"); *see also Pharmaceutical Care Mgmt. Ass'n*, 2008 WL 1757553, at *1-2; *Af-Ca*p, 475 F.3d at 1086.

Particularly after *Blonder-Tongue* and *Parklane Hosiery*, the Supreme Court has insisted upon mutuality of parties on both sides of the caption, or clear legal privity, before permitted estoppel on questions of law. *See Stauffer*, 464 U.S. at 172-73 & n. 5 (*Moser* exception applies except when cases "have ... ***same parties*** and the same legal issue ...) (emphasis added). Where such mutuality did not exist, the Supreme Court has noted the impropriety of preclusion on legal issues whose importance extends beyond a single federal circuit. *See Mendoza*, 464 U.S. at 163-64 (distinguishing *Stauffer* as a case in which "the parties to the ... lawsuits were the same").

As the D.C. Circuit has explained, "independent reconsideration of legal issues by the circuits can facilitate Supreme Court review by highlighting their complications and controversial aspects, and thus make for better informed decisions." *American Medical Int'l, Inc. v. Sec'y of Health, Educ. & Welfare,* 677 F.2d 118, 122-23 (D.C. Cir. 1981); *see also DuPont v. Train*, 430 U.S. 112, 135 n.26 (1977) (important issues of law should "mature through full consideration by the courts of appeals"). The Second and Ninth Circuits -- in which the Vermont and California district courts are located -- are particularly clear in their adherence to the *Moser* exception and the Restatement (Second) of Judgments § 29(7).[20] It is worth quoting the relevant comment on section 29(7) of the Restatement *in extenso*:

> When the issue involved is one of law, stability of decision can be regulated by the rule of issue preclusion or by the more flexible rule of *stare decisis*. … If the rule of issue preclusion is applied, the party against whom it is applied is foreclosed from advancing the contention that *stare decisis* should not bind the

[20] *See Divine v. CIR*, 500 F.2d 1041, 1049 (2d Cir. 1974) (rejecting collateral estoppel of legal issues even where facts are the same except for the party, noting advantages of full development in multiple circuits to facilitate Supreme Court review); *Af-Cap, Inc.*, 475 F.3d at 1086; *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 688-90 (9th Cir. 2004) (refusing to apply collateral estoppel in litigation with state government that turned on legal issues).

> court in determining the issue. ***Correlatively, the court is foreclosed from an opportunity to reconsider the applicable rule, and thus to perform its function of developing the law.*** This consideration is especially pertinent … ***when the issue is of general interest and has not been resolved by the highest appellate court that can resolve it.***

Restatement (Second) Judgments § 29(7) cmt. (i) (emphasis added).[21] As matters now stand, neither the Second nor the Ninth Circuit has considered the legal issues on which defendant seeks preclusion, and those issues are certainly of "general interest." Defendant should be free to argue the persuasive effect, if any, of the Vermont and California district court decisions on the EPCA preemption claims presented here, but defendant cannot apply collateral estoppel to block consideration of the merits.

### D. Preclusion Based on the Two Prior District Court Decisions Would Be Particularly Improper in Light of First Circuit Preemption Doctrine.

Separate from section 29(7) of the Restatement, section 28(2) also provides that preclusion cannot be allowed when "the issue is one of law and ... a new determination is warranted ... to take account of an intervening change in the applicable legal context ***or*** otherwise ... avoid inequitable administration of the laws." Restatement (Second) Judgments § 28(2) (emphasis added); *see also Commissioner v. Sunnen*, 333 U.S. 591, 599 (1948). Section 28(2) and principles it embodies provide an additional bar to preclusion in this case, because preemption doctrine in this Circuit -- recently confirmed by the Supreme Court -- is manifestly different from the merits analyses in the Vermont and California district court decisions.

---

[21] The balance of comment *i* makes it clear that the rule stated in section 29(7) is not limited to cases in which the target of estoppel is the government, by noting that "it is ***also*** pertinent that the party against whom [preclusion would otherwise apply] is a government agency," as one of several "factors" that would "ordinarily [] supercede[]" any application of preclusion doctrine. Restatement (Second) of Judgments § 29(7) cmt. (i). If the rule in section 29(7) saved only government parties from preemption, the comment would not have identified governmental status as one among several factors, "any" of one which should bar preclusion. *Id.* Non-governmental parties have avoided preclusion by virtue of the rule in section 29(7). *See, e.g., Pharmaceutical Care Mgmt. Ass'n v. Dist. of Columbia*, No. 07-7062, 2008 WL 1757553, at *1-2 (D.C. Cir. Apr. 18, 2008); *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007); *Wade v. Brady*, 460 F. Supp. 2d 226, 240 (D. Mass. 2006).

Adjudication of the merits of the preemption claim under EPCA requires interpretation of 49 U.S.C. § 32919(a), which prohibits state regulation "related to" fuel economy standards. The First Circuit has developed its own significant preemption jurisprudence involving Congressional texts that bar state regulation "related to" various federal programs. For example, in *New Hampshire Motor Transport Ass'n v Rowe*, 448 F.3d 66 (1st Cir. 2006), *aff'd*, 128 S.Ct. 989 (2008), the First Circuit concluded that "[t]he phrase "related to" has a broad meaning in ordinary usage," and "[w]hen used in a preemption provision … has a similarly broad reach." The First Circuit explained that a "sufficient nexus exists [for preemption] if the law … has a forbidden significant effect" on the subject matter designated in a "related to" clause. *Id.* at 79 (quotation omitted); *see also id.* at 77 ("[The] Supreme Court has focused on the effect that a state law has on carrier operations, not on the state's purpose for enacting the law.").

The California district court hearing the *Central Valley* case took a very different approach. It adopted what it conceded to be a narrow reading of the "related to" preemption provision in EPCA, and decided that even a significant effect on fuel economy would not be prohibited under 49 U.S.C. § 32919(a), so long as the State had a purpose unrelated to fuel economy regulation. *See* p. 5 above. *Rowe* leaves no place for the type of analysis that controlled the district court's decision in the *Central Valley* case.

Likewise, in the Vermont district court's analysis, it was crucial that in the district court's view, the Vermont regulation "encompasses emissions [that] do not correlate with fuel economy," regardless of the state regulation's concededly significant effect on fuel economy. 508 F. Supp. 2d at 352. The *Central Valley* district court also treated as significant the point that the California regulations in theory allowed manufacturers to "mitigate[e]" the required increases in fuel economy by reducing other greenhouse gas emissions. *See* pp. 4-6 above. By contrast,

the state statute invalidated in *Rowe* was not saved by the fact that it regulated activities in addition to than those that were "related to" the forbidden area. It was sufficient that the state law at issue in Rowe focused on, and had a "substantial" relation to, the prohibited area. *See Rowe*, 128 S.Ct. at 995. The preemption analysis used in *Rowe* prevents States from substantial interference with federal program by merely attaching non-preempted provisions to a given law or regulation. The Vermont district court's approach cannot be reconciled with the *Rowe* doctrine, any more than the narrow and crabbed reading of section 32919(a) in *Central Valley* could be.

The cases filed in this Court to challenge the Rhode Island regulation were filed promptly after Rhode Island completed adopt of the regulation. The happenstance that the Vermont and California cases proceeded to the merits before the cases in this Court did so does not provide a principled basis for defendant to avoid the strong preemption doctrine of the First Circuit. Defendant is free to try to distinguish decisions like *Rowe* on the merits, but the rules of collateral estoppel do not permit him to avoid the potentially controlling law of this Circuit.

**E. The Prior District Court Decisions Did Not Decide the Clean Air Act Issues Adversely to Plaintiffs and Thus Do Not Bar Litigation of Clean Air Act Preemption in This Court.**

This Court can make short work of defendant's motion with respect to the issues presented under the Clean Air Act.

First, far from ruling against any of the plaintiffs in this Court on the issue of Clean Air Act preemption, the *Central Valley* court held that, as those plaintiffs had argued, the Clean Air Act preempted the California greenhouse gas regulations. *See* p. 4 above. The Vermont district court's determination that the Clean Air Act claim presented in the *Green Mountain* case was

"moot" is inconsistent with the *Central Valley* court's relief under the Clean Air Act, and is hardly entitled to collateral estoppel effect.[22]

In addition, plaintiff in Case No. 06-69 (the Association of International Automobile Manufacturers, or "AIAM") is seeking a declaration, both in this Court and in the *Central Valley* court, that the greenhouse gas regulations were adopted in violation of section 209(a) of the Clean Air Act. AIAM will demonstrate that such a result is dictated by plain language of Section 209(a), which preempts all states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions" from new motor vehicles without a waiver of preemption by EPA. 42 U.S.C. § 7543(a), (b). Thus, section 209(a) of the Clean Air Act preempts not just Rhode Island's enforcement of the greenhouse gas regulations, but also its adoption of such regulations in the first place. As no court has decided this question, it may properly be pursued.[23]

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss should be denied.

---

22 *See* Restatement (Second) of Judgments § 29(4) *and id.* at cmt. (f); *cf. Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322, 330-331 (1979).

23 *Pelham Hall Co. v. Hassett*, 147 F.2d 63, 67 (1st Cir. 1945). Defendants may try to cite the Second Circuit's decision in *Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envt'l Conservation*, 17 F.3d 521 (2d Cir. 1994) as addressing this question. However, that case is inapplicable because it interpreted Section 177 of the Clean Air Act, 42 U.S.C. § 7507, which employs language very different from the disjunctive language of Section 209(a). *Compare* 42 U.S.C. § 7507 (allowing other states to "adopt and enforce for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines ... if such standards are identical to California standards for which a waiver has been granted.…") *with* 42 U.S.C. § 7543(a) ("[n]o State ... shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines .…").

Dated: April 28, 2008

Respectfully submitted,

/s/ Patricia K. Rocha
Patricia K. Rocha (# 2793)
John A. Tarantino (# 2586)
ADLER POLLOCK & SHEEHAN PC
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
*Counsel for All Plaintiffs in Case No. 06-69*

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, Jr.(# 1139)
Kristin E. Rodgers (# 4842)
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903
Tel: (401) 831-8900
*Counsel for The Association of International Automobile Manufacturers*

Stuart A. C. Drake
Andrew B. Clubok
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
*Counsel for Chrysler LLC, General Motors Corporation, and Alliance of Automobile Manufacturers*

Raymond B. Ludwiszewski
Charles H. Haake
*Admitted Pro Hac Vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 955-8500
*Counsel for The Association of International Automobile Manufacturers*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April, 2008, I did send a true copy of the within pleading **by electronic means (ECF)** to:

Tricia Jedele
Special Assistant Attorney General,
Environmental Advocate
Michael Rubin, Esq.
DEPARTMENT OF ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903

Patty Fairweather
Executive Legal Counsel
R.I. Department of Environmental Management
235 Promenade Street, 4th Floor
Providence, RI 02908

Kristin E. Rodgers, Esq.
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903

Charles H. Haake, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

Cynthia Giles, Esq.
Conservation Law Foundation
55 Dorrance Street, Suite 201
Providence, RI 02903-2221

Matthew F. Pawa, Esq.
1280 Centre Street, Suite 230
Newton Centre, MA 02459

Melissa A. Hoffer, Esq.
Conservation Law Foundation
27 North Main Street
Concord, NH 03301

Stephen F. Hinchman, Esq.
Conservation Law Foundation
14 Main Street, Suite 200
Brunswick, ME 04011

David Bookbinder, Esq.
Sierra Club
408 C Street, NE
Washington, DC 20002

/s/ Patricia K. Rocha

*452722_1.doc*