**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| THE ASSOCIATION OF INTERNATIONAL AUTOMOBILE MANUFACTURERS,<br><br>Plaintiff,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | C.A. No. 06-69T |
| LINCOLN DODGE, INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>W. MICHAEL SULLIVAN, in his official Capacity as Director of the Rhode Island Department of Environmental Management,<br><br>Defendant. | C.A. No. 06-70T |

**STATE AND DEFENDANT-INTERVENORS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs do not dispute that the elements of collateral estoppel are fully satisfied in this case. Instead, Plaintiffs argue only that collateral estoppel cannot bar relitigation of the ***type*** of legal issues presented here, and that the Rhode Island dealers are not in privity with the parties to the California and Vermont cases. Plaintiffs are wrong on both points.[1]

**A. The Exceptions To Collateral Estoppel Do Not Apply To This Litigation**

Plaintiffs first seek the protection of the so-called "Moser exception," see Mot. Opp. at 15 (citing U.S. v. Moser, 266 U.S. 236, 242 (1924)), which prohibits, in narrow circumstances, preclusion of "unmixed questions of law."[2] This exception, however, applies only when the issue to be precluded "is one of law ***and either*** (1) the two actions involve claims that are substantially unrelated ***or*** (2) a new determination of the legal issue is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Burlington Northern RR Co. v. Hyundai Merchant Marine Co. Ltd., 63 F.3d 1227, 1229 (3d Cir. 1995) (citing Restatement (Second) of Judgments § 28 (1982) (emphasis in original)). Plaintiffs cannot meet either condition.

Moser held that "a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action," 266 U.S. at 242, and precluded relitigation of the legal question previously decided — whether service as a Naval Academy cadet during the Civil War qualified as Civil War service for pension enhancement purposes — because it was "***the same*** as that definitely and actually litigated and adjudged in favor of the claimant in the three preceding

[1] The State and Defendant-Intervenors stand ready to address all aspects of Plaintiffs' positions at oral argument.

[2] By accepting the factual conclusions made in the Vermont litigation, see Mot. Opp. at 15 n.19, and by disputing application of collateral estoppel only with regard to "two pure questions of law," Mot. Opp. at 7—which Plaintiffs define as (1) whether the GHG regulations are expressly preempted under 49 U.S.C. § 32919(a) and (2) whether any other provision of the Energy Policy and Conservation Act ("EPCA") or the Clean Air Act saves the regulation from express preemption, id. — Plaintiffs concede that they are precluded from relitigating all remaining EPCA preemption issues.

suits." Id. (emphasis added). Subsequent Supreme Court decisions have maintained this principle, readily rejecting the "unmixed question of law" exception in cases where parties seek to relitigate legal questions that are the same or related to issues they lost in previous actions. See U.S. v. Stauffer Chemical Co., 464 U.S. 165, 170 (1984) (quoting Montana v. U.S., 440 U.S. 147, 162 (1979) (affirming defensive use of collateral estoppel and holding exception applies only "to issues of law which arise in successive actions involving unrelated subject matter").[3]

*1. The Issues Raised In The Rhode Island Action Are Not Only Related, But Are Identical to Those Previously Adjudicated in California and Vermont.*

Plaintiffs do not dispute that they have raised identical legal challenges to the identical greenhouse gas emissions standard in each of their three actions. See Defs.' Mot. J. at 12-17. Under section 177 of the Clean Air Act, 42 U.S.C. § 7507, Rhode Island and Vermont were required to, and did adopt, emission standards that are *identical* to California's standard for each model year. Thus, the legal issues in this action are directly related to, and indeed, are the same as the issues in the prior actions, and the exception for "unmixed questions of law" does not apply. Stauffer, 464 U.S. at 170-171; Montana, 440 U.S. at 163; Moser, 266 U.S. at 242. See also Burlington Northern RR Co., 63 F.3d at 1237 ("A party cannot satisfy the 'substantially unrelated claim' test where 'the same general legal rules govern both cases and . . . the facts of both cases are indistinguishable as measured by those rules.") (citing 18 Wright & Miller, Federal Practice and Procedure § 4425, at 253-54 (1981)).

Because these actions are *related*, Plaintiffs' argument that applying preclusion would thwart the development of the law is also unavailing. The Supreme Court made clear in Montana that this concern is "of possible relevance," only when "successive actions involve

[3] Stauffer, as here, involved a question of statutory interpretation of the Clean Air Act. 464 U.S. at 168. The Supreme Court held that resolution of this legal issue against EPA in the Tenth Circuit was binding upon the agency in a pending Sixth Circuit case with the same plaintiff where the factual differences between the two cases had "no legal significance." Id. at 172. The Supreme Court's rule and rationale apply here with equal force.

substantially ***unrelated*** claims." Montana, 440 U.S. at 162-63 (emphasis added). The Court's concern is with "freez[ing] doctrine in areas of the law where responsiveness to changing patterns of conduct or social mores is critical." Id. As in Montana, however, "the instant case poses no such conceptual difficulties [since] the legal 'demands' of this litigation are so closely aligned in time and subject matter to those in [the prior litigation]." Id. (citations omitted).

Plaintiffs' attempt to fashion a new rule requiring mutuality of defendants when preclusion is applied to legal issues also fails. See Mot. Opp. at 16 (citing U.S. v. Mendoza, 464 U.S. 154, 163-64 (1984)). No such rule exists.[4] Outside the narrow context of Mendoza, which barred only ***offensive*** collateral estoppel ***against the government*** in certain instances, 464 U.S. at 162 — and which is not the case here — mutuality is not a required element for preclusion, even when it involves purely legal issues previously litigated in the courts of different circuits.[5] See, e.g., Burlington Northern RR Co., 63 F.3d at 1237-38 (reviewing unmixed question of law doctrine and applying non-mutual collateral estoppel to preclude railroad from raising identical legal issue it lost against a different party in a different circuit); Ackerman v. American Air Lines, Inc., 924 F.Supp. 749, 753-54 (N.D. Tex. 1995) (application of non-mutual defensive collateral estoppel to purely legal issues is "mandatory" where elements of collateral estoppel are

---

[4] In fact, the Mendoza Court expressly noted that the government had not invoked the "exception to the doctrine of collateral estoppel for unmixed questions of law arising in successive cases involving unrelated subject matter" and explained that "[o]ur holding in no way depends upon that exception." 464 U.S. at 163 n.7 (quotations and citations omitted).

[5] With regard to the ***defensive*** use of collateral estoppel, as invoked here, Mendoza actually reaffirmed that the Court has "abandon[ed] the requirement of mutuality of parties." Id. at 158. Plaintiffs attempt to evade this well settled facet of the law by erroneously describing this case as "***offensive*** collateral estoppel." Mot. Opp. at 8 (emphasis added). It is not. See Mendoza at 159 n.4 ("Defensive collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or different party.")

met and plaintiffs twice lost the same issues against different parties in the appellate and district courts of different circuits).[6]

*2. There Has Been No Intervening Change in the Law*

The Supreme Court's recent decision in Rowe v. New Hampshire Motor Transport Ass'n, 128 S.Ct. 989 (2008), does not work an "intervening change in the applicable legal context or otherwise" warrant "a new determination of the legal issue[s]." Burlington, 63 F.3d at 1229. Rowe merely confirms the long-held rule that Congressional intent is the touchstone for interpreting an express preemption provision. See, e.g., Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). Specifically, the Rowe Court held that incorporation of the "relate to" preemption provision from the Airline Deregulation Act of 1978 into the successor Federal Aviation Administration and Authorization Act of 1994 was evidence of Congressional intent to also incorporate the Court's prior interpretation of the "relate to" clause in the 1978 Act into the 1994 Act. See Rowe, 128 S.Ct. at 994-95 (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)). In short, Rowe continues prior precedent, both with regard to preemption under the two aviation acts as well as to the proper mode of analysis for preemption cases in general.[7]

There is no split between the circuits on these points.[8] Moreover, in the prior actions the Vermont and California courts used the very same express preemption analysis applied by the

---

[6] Even if it were relevant, the strict identicality requirements of the Clean Air Act negate any potential concern over lack of mutuality because Rhode Island can only adopt the same standards as California in each model year. See 42 U.S.C. § 7507.

[7] As a separate matter, contrary to Plaintiffs' suggestion, the legislative text, statutory scheme and history of the aviation acts analyzed in Rowe have no bearing on the Clean Air Act or the Energy Policy and Conservation Act; nor does Rowe change or otherwise effect the Supreme Court's interpretation of the relationship of those statutes in Massachusetts v. EPA, 127 S.Ct. 1438 (2007).

[8] In fact, in concluding that Congress intended the 1994 aviation act to incorporate prior interpretations of the "relate to" preemption clause from the 1978 Act, the First Circuit relied specifically upon Second and Ninth Circuit cases reaching the same conclusion. See New Hampshire Motor Transport Ass'n v. Rowe, 448 F.3d 66, 77 (1st Cir. 2006) (citing Ace Auto Body & Towing Ltd. v. City of New York, 171 F.3d 765, 772 (2d Cir.1999) and Californians for Safe Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1187 (9th Cir.1998)).

First Circuit and approved by the Supreme Court in Rowe. See 448 F.3d at 74-75 (reviewing the plain text, the structure and purpose of the statute, and legislative history to discern congressional intent). In both cases, the district courts concluded that Congress did not intend to expressly preempt the challenged greenhouse gas regulations. See Defs.' Mot. J. at 13-14. Plaintiffs' Rowe theory is nothing more than an attempt to reargue the merits of these determinations. See North Georgia Electric Membership Corp. v. City Of Calhoun, Georgia, 989 F.2d 429, 432-33 (11th Cir. 1993) ("[C]ollateral estoppel generally protects defendants from repetitive litigation, unless prior law has been *essentially overruled*, thus making continued application of the principle of the earlier case unjust.") (emphasis added).

**B. The Rhode Island New Car Dealers Properly May Be Precluded**

Plaintiffs argue there is no privity between the Rhode Island dealers and their co-plaintiffs because "Defendants do not and cannot contend that the Rhode Island dealers 'substantially control[ed]' any plaintiff in the prior actions." Mot. Opp. at 14. To reach this faulty conclusion, Plaintiffs ignore the central privity arguments raised by the State and Defendant-Intervenors **—** *i.e.*, "privity is properly established where greenhouse gas standards regulate the manufacturers, not new vehicle dealers, and where local dealers presence as plaintiffs is derivative of the manufacturers who are bound by the prior adjudications, see Defs.' Mot. J. at 19-20, — and misread the decisions in Lanphere Enterprises, Inc. v. Doorknob Enterprises, LLC 145 Fed. Appx. 589 (9th Cir. 2005); People's Liquor Warehouse-Hopkinton, Inc. v. Department of Business Regulation, 2007 R.I. Super. LEXIS 78 (2007) and NLRB v. Donna–Lee Sportswear Co., Inc., 836 F.2d 31 (1st Cir. 1987) — the holdings in each of which are applicable here.

Because the Rhode Island dealers' interests are indistinguishable from the interests of their manufacturer and trade association co-plaintiffs and of the Vermont and California dealer plaintiffs in the prior cases, and because all of these plaintiffs share the Rhode Island dealers' objections to the challenged regulations, allege the same harms, assert identical claims and arguments, possess the same incentives to oppose the enforcement of the challenged regulations, share legal counsel, and seek the same declaratory and injunctive relief, "all of the facts and circumstances [of this case] justify a conclusion that non-party preclusion is proper." Donna-Lee Sportswear, 836 F.2d at 35.

Additionally, the doctrine of virtual representation does apply to the dealer-plaintiffs and merely listing them as additional plaintiffs cannot save this case from collateral estoppel. See Perez-Guzman v. Gracia, 346 F.3d 229, 237 (1st Cir. 2003). Plaintiffs cite North Atlantic Distribution Inc. v. Teamsters Local Union No. 430, 2007 WL 2377029 (D.R.I.) for the proposition that "virtual representation will not serve to bar a nonparty's claim unless the balance of the equities tips in favor of preclusion," but avoid any discussion as to what the considered equities might be. Mot. Opp. at 14. Plaintiffs have conspicuously and continuously failed to acknowledge the derivative nature of dealer-plaintiffs' harm, which, if it exists at all, is highly speculative at this point, and wholly dependent on the manufacturer-plaintiffs' compliance strategy when and if the regulations become enforceable. Instead, Plaintiffs insert footnote 18, declaring only that there has been "no gamesmanship," a factor that, according to Plaintiffs' own citations will justify application of the virtual representation doctrine. See North Atlantic Distribution Inc., 2007 WL 2377029 at *5; see also Gonzalez, 27 F.3d at 761 (other equity considerations include, "evidence of tactical maneuvering designed unfairly to exploit technical nonparty status in order to obtain multiple bites of the litigatory apple"). Tellingly, after the

Vermont court rendered its judgment, yet another case was filed against a state that has adopted the California GHG regulations—New Mexico—but this time *only* by dealer plaintiffs. See Zangara Dodge, Inc. v. Curry, No. 1:07-cv-01305 (D.N.M.) (complaint filed Dec. 27, 2007 alleging identical preemption theories as the Rhode Island, Vermont and California cases). These tactics are prohibited and may not be used to avoid collateral estoppel. See Defs.' Mot. J. at 22-23 n.15-16.

**C. Plaintiffs' Clean Air Act Preemption Claims Are Moot and Those Determinations May Not Be Relitigated.**

Plaintiffs' Clean Air Act preemption claims have twice been dismissed as moot. See Defs.' Mot. J. at 17-19. Although Plaintiffs ignore this fact and attempt to jump to the merits, it is well settled that preclusion attaches to jurisdictional determinations. See North Georgia Electric Membership Corp., 989 F.2d at 432-33 (collecting cases). Therefore, Plaintiffs may not relitigate these two prior mootness determinations.

Defendants
By their Attorney,

PATRICK C. LYNCH
Attorney General

*/s/ Tricia K. Jedele*
______________________________
Tricia K. Jedele #5958
Special Assistant Attorney General
& Environmental Advocate
150 South Main Street
Providence, RI 02903
(401) 274-4400
(401) 222-3016 (fax)

Defendant-Intervenors
By their Attorney,

*/s/ Cynthia J. Giles*
________________________________
Cynthia J. Giles, Esq. #5868
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903
(401) 351-1102
(401) 351-1130 (fax)

*Stephen F. Hinchman, Esq.*
*David Bookbinder, Esq.*
*Melissa A. Hoffer, Esq.*
*Matthew F. Pawa, Esq.*

Pro Hac Vice Counsel
for Defendant Intervenors

**CERTIFICATION**

I hereby certify that on the 12th day of May, 2008, I sent a true copy of the within by electronic means (ECF) to:

Joseph V. Cavanagh, Jr.
jvc@blishcavlaw.com,

Andrew B. Clubok
aclubok@kirkland.com

Stuart C. Drake
sdrake@kirkland.com

Mary C. Dunn
mcd@blishcavlaw.com

Kristin E. Rogers
ker@blishcavlaw.com

Patricia K. Rocha
procha@apslaw.com
dhumm@apslaw.com
jtarantino@apslaw.com

and by regular mail to:

Charles H. Haake
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

Raymond B. Ludwiszewski
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

___*/s/ Tricia K. Jedele*_